FRANK CAVENDER, *substituted for the Atchison Savings Bank*, v. J. M. ROBERSON AND F. I. ROBERSON, *Partners as J. M. Roberson & Co.*

1. SALE; *Fraud; Rescission of Contract; Damages.* Where a seller is given by the purchaser authority to select and ship to him a stock of staple groceries, at fifteen to twenty per cent. less than he could buy them elsewhere; and subsequently the seller selects, puts up, bills and ships to the purchaser a stock of groceries, part of which is spoiled, unsalable and worthless, and the seller fraudulently makes out a bill with prices above the current prices for staple goods, and the purchaser is thereby deceived

and defrauded, the purchaser is not restricted to his right to rescind the contract on the discovery of the fraud, but he may retain the goods, and, in an action to recover the contract-price, have allowed the damages to which he is entitled on account of the misrepresentations and fraud of the seller.

2. INSTRUCTION, *Not Supported by Evidence.* Where an instruction contains an intimation of fact upon a particular point not fully supported by the evidence, and it is apparent from the special findings that such instruction misleads the jury, and a part of the damages allowed in the case may have been founded upon such instruction, the judgment must be reversed.

3. CASE-MADE; *Interpretation.* Where the case-made recites that although it "does not contain all of the evidence in minute detail, yet it contains the substantial parts of the evidence," *held,* that the record will be interpreted to contain in substance all the evidence offered upon the trial.

*Error from Atchison District Court.*

ACTION commenced by the Atchison Savings Bank against J. M. Roberson and F. I. Roberson, partners as *J. M. Roberson & Co.,* on July 14, 1882, upon the following written instrument, before a justice of the peace of Atchison county:

"$278.16.          ATCHISON, KAS., June 16, 1882.

Fifteen —— after date, we promise to pay to the order of G. Cavender two hundred and seventy-eight 16-100 dollars, value received, with interest at 10 per cent. per annum after maturity.          (Signed)     J. M. ROBERSON & Co."

The bill of particulars alleged that at the time of the execution of said written instrument, it was the agreement between the parties that said instrument should be due and payable fifteen days after date, but by mistake in writing the same, the word "days" was omitted therefrom, but that in fact said note matured and became due on July 4, 1882. The case was appealed to the district court, and while the action was pending in that court the bank assigned the written instrument sued upon to Frank Cavender, who was, by leave of the court, substituted as plaintiff. The instrument between the parties was treated as a promissory note payable in fifteen days after date. The defendants challenged the consideration of the note, and alleged that their names were obtained from them by fraud and imposition, as follows: That it was executed for a stock of

goods and groceries purchased of Green Cavender, the payee of the note, just prior to its date, which goods Cavender represented were fresh and of first-class quality, and that he would sell the same at prices greatly below the current prices and greatly lower than the defendants could obtain the goods elsewhere; that he would furnish the goods needed for the defendants and select only such as would be suitable for their trade; that the defendants relied upon the statements and representations of Cavender, and, believing that he would act honestly in the matter, agreed with him to purchase from him groceries to the amount of $300 to $500 worth, leaving the selection of the goods to him; that soon after, he selected, put up and shipped to the defendants at Arrington, a bill of goods which amounted to $517.77; that shortly afterward he shipped to them other bills of goods, aggregating in all $643.95, at prices charged in the bill; that Cavender did not select suitable goods for the trade at Arrington, but instead thereof selected spoiled and rotten goods and unsalable fancy groceries that were worthless; and that instead of charging the defendants for the goods at rates below the prices usually charged, he charged them greatly in excess of the current wholesale prices for first-class goods, and in many cases charged the defendants more than the usual retail rates.

Plaintiff replied, alleging sale of goods by G. Cavender to defendants December 28th, 1881, and for which defendants on January 7th, 1882, gave a note at ninety days; that on January 9th and February 23d, 1882, defendants bought other bills of G. Cavender; that on June 16th, 1882, said G. Cavender and defendants had a settlement of said matters, at which said note of January 7th, 1882, was surrendered, and said note in suit and another of like tenor and amount given — the two notes aggregating $516.32.

Trial had at the June Term, 1883, by the court with a jury. The jury returned a verdict for plaintiff, Frank Cavender, and assessed the amount of his recovery at the sum of $141.78, and also made the following findings of fact:

Q. 1. Did defendant Roberson contract with G. Cavender

for from $300 to $500 worth of staple groceries, in the latter part of December, 1881, at 20 per cent. lower for the goods that he, Cavender, had on hand, than said Roberson could buy the same class of goods anywhere else? A. Yes.

Q. 2. Did said Cavender furnish the class and quality of goods he contracted with Roberson to furnish? A. In part.

Q. 3. Did said Cavender furnish the said goods at 20 per cent. lower than he, Roberson, could buy the same line of goods from other persons? A. No.

Q. 4. Did said Roberson make the selection of the goods? A. No.

Q. 5. Did said Roberson rely wholly on said Cavender to honorably make the selection of said goods contracted for? A. Yes.

Q. 6. Did said Roberson rely on said Cavender to put the prices of said goods at 20 per cent. lower than the current rates for such goods from other dealers? A. Yes.

Q. 7. Did said Cavender charge said Roberson more for said goods than the same line of fresh and new goods were selling for by other dealers, and if yes, about how much more or about how much higher in per cent.? A. Yes; about fifteen per cent.

Q. 8. Did said Roberson give his note for the first bill of goods before having examined the said goods? A. Yes.

Q. 9. What was the quality of the goods furnished to said Roberson? A. Poor.

Q. 10. Did said Roberson and Cavender have a settlement about said goods at the time the two notes were given by Roberson to Cavender and the first note given up? A. No.

Q. 11. Was any portion of the goods furnished by Cavender spoiled, unsalable and worthless at the time the same were furnished to said Roberson; and if yea, what amount of said goods were so worthless? A. About one-sixth.

Q. 12. What was the actual value of all the goods and property furnished by Cavender to Roberson? A. Can't tell.

Q. 13. Did Cavender know at the time he furnished said goods to Roberson that a part of said goods were spoiled and worthless? A. He did.

Q. 14. What amount of money did Roberson pay Cavender on or about February 11, 1882? A. One hundred and twenty dollars.

Q. 15. What amount of value of eggs and butter did Roberson furnish said Cavender after February 11, 1882? A. Between eighty and ninety dollars.

Q. 16. Did said Roberson know what the quality of the goods was at the time the same were furnished? A. No.

Q. 17. Did said Roberson know anything about what the jobbing or wholesale prices of these goods were? A. No.

Q. 18. Did Cavender take advantage of said Roberson's ignorance of the quality and prices of the goods with the intent to commit a fraud on said Roberson in the sale of said goods to him? A. To a certain extent, he did.

Q. 19. Did said Cavender act honestly and in good faith with said Roberson in the selection of said goods, and in charging the prices he did therefor? A. We think not.

The plaintiff filed a motion for a new trial, which was overruled, and judgment rendered upon the verdict of the jury.

The plaintiff excepted, and brings the case here.

*Jackson & Royse*, for plaintiffs in error.

*S. H. Glenn*, and *J. C. Greenawalt*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: Upon the trial, the defendants produced as a witness one D. L. Nesbit, who testified, among other things, "that he had been in the grocery business for twenty years; that he knew the stock of groceries kept by Kimbrough & Trice, who failed in April or May, 1881, and whose stock of groceries was subsequently purchased by Green Cavender; that he went through the stock and examined it; that it was old and shelf-worn; that he did not consider the stock worth to exceed fifty cents on the dollar." He then stated that he knew the prices generally of groceries. He was requested to examine the bill of goods bought by the defendants, and after looking over the same, testified "that he thought he knew what the market value of some of the goods was." He further testified "that he could not state the value of the coffee, mackerel, tea, starch and tobacco, because there are different grades of such goods, and the bill did not show what grades they were; but he knew the prices of the different grades of those kinds of goods." The plaintiff then objected to evidence of value, because incompetent and irrelevant, and be-

cause the market value was within the reach of all; and further, because the stock of groceries sold to the defendants was old, and the witness was permitted to testify as to the value of new goods. There was no error in the admission of this evidence. Nesbit had seen and examined the goods in stock—not the particular goods furnished, but the general stock—and was a competent witness concerning the value of the same.

The answer alleged that Green Cavender "represented to the defendants that his goods in stock were fresh, and of first-class quality, and that, as he was about going out of the grocery trade, he would sell the defendants a stock of goods suitable for their trade at prices greatly below the current cost prices, and greatly lower than the defendants could obtain the goods elsewhere." As the defendants further alleged in their answer that they relied upon these representations in accepting the stock of groceries shipped them, and in executing their notes therefor, the value of the stock sold was a material issue in the case, and the concession by the plaintiff that the stock selected, put up, billed, and shipped out by Green Cavender to the defendants was an old one, is very favorable to the claim of the defendants.

The case of *Graffenstein v. Epstein*, 23 Kas. 443, is cited that evidence of the market value of the stock of goods shipped ought not to have been received. That case is not in point. The principle recognized in that case is that—

"A misrepresentation as to the market price of an article of general commerce, made falsely and fraudulently by one party to induce a sale, and relied upon by the other, will not avoid a contract therefor, when there are no circumstances making it the special duty of the one party to communicate the knowledge he possesses, and none giving him the peculiar means of ascertaining such market price."

Here the seller agreed to sell a stock of staple groceries suitable for the defendants' trade, of first-class quality, at prices greatly below the current rates for such goods. The defendants relied upon these representations, and permitted the seller

to select and ship the goods. Therefore, evidence tending to show that the stock of goods had been fraudulently billed, and charged at current rates, and in some instances above current rates, was relevant. (*Lord v. French*, 61 Me. 420.)

It is claimed that the court committed error in giving and refusing instructions. The third instruction asked for was properly refused, because it virtually took the case away from the jury and directed a verdict for the plaintiff without regard to the defense made in the action. The fourth instruction asked for ought not to have been given, because it did not embrace the law of the case. (*Lord v. French*, supra.) The fifth instruction asked for and refused was to the effect that if Green Cavender and the defendants had a settlement about their matters in dispute, and if the note in controversy was given in pursuance of such settlement, the defendants were bound by the settlement, except for mistake or fraud. The sixth instruction was fully covered by the charge of the court, in the following language:

"It also appears that on or about June 15, 1882, the defendants took up said promissory note of $517.07, given January 2, 1882, and gave to said Green Cavender the instrument in controversy, and also another instrument, being a promissory note for $278.16, dated June 15, 1882, and payable fifteen days after date, with interest at ten per cent. per annum after maturity. Said Green Cavender claims that these two instruments were given to take up said note of January 2, 1882, and also to settle all accounts between him and the defendants up to said time. If you find that such was the case, and that plaintiff has succeeded to the rights of Green Cavender, and that said instrument was intended to be payable in fifteen days, then plaintiff is entitled to recover the full amount of the face of said instrument, with interest thereon, unless defendants have shown by a preponderance of evidence that there was a mistake in the computation, or that said settlement was obtained by some fraud or imposition on the part of said Green Cavender. If a mistake was made in the computation, you should correct it in your verdict, if you have evidence sufficient for the purpose; but if you find that the defendants at the time of giving said two instruments and the making of said alleged settlement knew the quality and prices

of the goods that they had obtained from said Green Caven-
der, and that they were giving said instruments in settlement
for the same, then they ought not now to be assisted by the jury
in undoing their work and setting aside their settlement on the
ground of the quality or the prices of the goods."

The sixth instruction contained the intimation that Green
Cavender agreed to sell the groceries shipped to the defend-
ants at 20 per cent. less than they could be purchased for else-
where. This instruction was misleading, because the evidence
did not fully support it. J. M. Roberson, one of the defend-
ants, testified that Green Cavender "said he would sell the
goods to me at from 15 to 20 per cent. less than I could get
them elsewhere." Joseph A. Hamm testified that Cavender
said to J. M. Roberson (the purchaser of the goods) "that he
was closing out, and would sell to him the bill of goods at 15
to 20 per cent. less than he could buy elsewhere, and Rober-
son said he would buy at these terms, and would leave it to
Cavender and me as to what he wanted, and would leave it to
us to select the goods."

The evidence therefore shows that Green Cavender agreed
to sell the stock of groceries charged to the defendants from
15 to 20 per cent. less than they could buy them elsewhere,
but not at 20 per cent. less. The jury evidently followed
closely the intimation of the court in their verdict and special
findings, because the sixth finding of fact is as follows:

"*Question:* Did said Roberson rely on said Cavender to put
the prices of said goods at 20 per cent. lower than the current
rates for such goods from other dealers? *Answer:* Yes."

We should also add that there was no statement in the answer
alleging that Green Cavender agreed to furnish goods such as
he had in his own stock at 20 per cent. less than they could
be purchased for elsewhere. Counsel for defendants object to
the consideration of this instruction and the finding based
thereon, because they say the case-made does not purport to
contain all the evidence. The case does, however, show that
it contains the substantial parts of the evidence, and we con-
strue this to mean that it contains in substance all the evidence

offered upon the trial, although it is not written out in the record in minute detail.

The defendants were not restricted to their right to rescind the contract and return the goods. (*Weybrich v. Harris*, 31 Kas. 92; *Lord v. French*, supra; *Wheeler & Wilson Mfg. Co. v. Thompson*, ante, p. 491.)

It is not necessary to dwell upon the other questions in the case. If the jury had returned in their special findings the actual value of the goods furnished by Cavender to the defendants, we might have corrected the judgment of the district court without reversing the same, by the addition of five per cent. upon the value of said goods; but to question 12, which was as follows: "What was the actual value of all the goods and property furnished by Cavender to Roberson?" the jury answered, "Can't tell."

On account of the erroneous and misleading instruction, which was given without full support of the evidence, the judgment of the district court must be reversed.

All the Justices concurring.