## 190 WEBB v. BRANNER.

JOSIE WEBB v. JOHN S. BRANNER.

No. 10534.

1. CASE-MADE—"*the substance of all the testimony*" *deemed same as "all the testimony.*" Where there is a statement in a case-made that it contains "the substance of all the testimony," the evidence will be deemed to be before the court for the purposes of review.

2. FRAUD BY TRUSTEE—*sale by fiduciary to third person to convey to him, is sale by fiduciary to himself.* An administrator or guardian is prohibited from purchasing trust property at his own sale, and a sale by him to another who does not pay any consideration, and who immediately transfers the property to the administrator or guardian, is void, and as much a violation of the fiduciary relation and as great a fraud in the eye of the law as if the sale had been made directly to himself.

3. ——— *and final settlement of trust will not estop beneficiary from asserting title to such land as against the fiduciary, unless beneficiary knew the facts.* Although a final settlement is made by the administrator or guardian, the owner of the land and beneficiary of the trust will ordinarily not be estopped from asserting title to land so wrongfully obtained by the trustee, unless the beneficiary had full knowledge of the wrongs practiced by the trustee and of the facts upon which the rights of the beneficiary are founded.

4. ——— *nor will the facts of improvements made, with beneficiary's knowledge, during minority.* Nor can the fact that the trustee made improvements on land so obtained during the infancy of the beneficiary, and with her knowledge, prevent her from claiming the land after she attains majority.

5. INSTRUCTIONS EXAMINED.—Instructions examined and some language pointed out which is deemed to be of a misleading character.

Error from Shawnee District Court.    Z. T. Hazen,
Judge.    Opinion filed March 5, 1898.    *Reversed.*

*Keeler, Welch & Hite,* for plaintiff in error.
*S. B. Isenhart,* for defendant in error.

JOHNSTON, J.    This was an action by Josie Webb to
recover from John S. Branner an undivided one-fourth
interest in a valuable lot in the city of Topeka, to-
gether with the rents and profits thereof.

Prior to October 10, 1875, the lot was jointly owned
by Jacob Kline and John S. Branner, who were en-
gaged in business together under the firm name of
Branner & Kline.    On the date mentioned Jacob
Kline died intestate, leaving as his only heirs Josie
Kline, now Josie Webb, who was then six years of
age, and another daughter, Millie Kline.    On Octo-
ber 15, 1875, Branner was appointed administrator of
the estate of Jacob Kline, and continued to act in that
capacity until December 29, 1880, when he made what
is termed his final report, to which was attached an
affidavit that all the debts of the estate were fully paid
and that the estate was fully administered.    His final
account was accepted and he was discharged by the
probate court as administrator.

It further appears that on January 10, 1876, he
undertook to administer the estate of the firm of
Branner & Kline, as surviving partner, and under
direction of the probate court gave a bond, as surviv-
ing partner, and that he made an inventory and filed
accounts as such surviving partner.    In the inven-
tory of the partnership property the lot in question
was described.    On January 6, 1877, he was appointed
and qualified as guardian of the persons and estates
of Josie Kline and Millie Kline, and continued to act

as such guardian during their minority. On March 26, 1881, Branner applied for and obtained an order of the probate court authorizing him to sell the lot in question for the payment of partnership debts. On December 13, 1881, he reported that he had sold an undivided half of the lot to Otto Kuehne for $3,000. An order was entered approving the sale and directing that a deed be executed to Kuehne. A deed was executed, purporting to convey one-half of the lot, and on the following day Kuehne in turn conveyed the same interest to Branner. At the time of the sale of the lot the plaintiff was an infant about twelve years of age. Shortly after the making of the deeds Branner erected a building on the lot, the cost of which was estimated at from $7,000 to $10,000. At the time the deed was executed from Kuehne to Branner there was a small frame building upon the lot, of little value, but since the erection of the larger building in 1881 the rental value of the lot has been $210 per month.

In 1891 an account was filed by Branner, as guardian of the person and estate of the plaintiff, in which it was stated that she was indebted to him as guardian in the sum of $4,406.96, and which the court made a charge on the estate inherited by the plaintiff from her father. An order was entered discharging Branner and his sureties from liability by reason of his guardianship, but in the order there was an exception of any property or estate inherited by the plaintiff and her sister or either of them in which Branner owned or owns any interest as surviving partner of Jacob Kline. In 1892 another report, designated as the final report as guardian of the children of Jacob Kline and as surviving partner of the firm of Branner & Kline, was presented to the probate court, and on April 20 of that year this report was

examined by the probate court, the plaintiff being present in person and represented by attorneys. During the consideration of this account the plaintiff and her attorneys objected to various items and resisted the allowance of the account.

The court found that there was due from the plaintiff to her guardian, Branner, the sum of $1,146.52, and that there was due from Branner, the guardian, to Millie Kline the sum of $3,350.44, and directed that when these amounts were paid, as well as some allowances of attorney's fees, and costs, that Branner, as guardian and surviving partner, should be discharged from his trust, and that the sureties upon his bond should be relieved from liability by reason of the trust. Shortly after the making of this order the plaintiff paid the amount found by the probate court to be due from her to the guardian to her sister, and this amount was credited upon the indebtedness of Branner to the sister. About two years after the settlement, this proceeding was begun.

The plaintiff claims that as one of the heirs of her father she inherited a one-fourth interest in the lot, and that the proceedings by which Branner obtained the conveyance of the lot were irregular and void, and he therefore took no title by virtue of those proceedings. On the part of Branner, it is claimed that the lot was sold under the direction and with the approval of the probate court, for a fair price; that the proceeds were applied to the payment of partnership debts; and that if the proceedings were irregular and void, they have been ratified and acquiesced in by the plaintiff to such an extent that she is estopped from asserting title to the lot. The trial resulted in favor of Branner, and the plaintiff brings the case here, alleging errors in the admission of testimony, in charging the jury, and in upholding the verdict.

13—59 KAN.

The determination of the errors assigned rests to some extent on the testimony, and the defendant urges that the testimony has not been so preserved as to make the errors available. .There is a recital in the case-made that it contains "the substance of all the testimony," and this we think is sufficient to warrant a review. *Cavender v. Roberson*, 33 Kan. 626, 7 Pac. 152.

1. Certain words mean all testimony.

From the testimony it appears that the proceedings for the sale of the lot were fatally defective, and the trial court instructed the jury that the orders of the probate court relating to sale and confirmation were absolutely void, and that the deeds from Branner to Kuehne and from Kuehne back to Branner were also void, and did not operate to transfer any title in the property to Branner. Aside from the invalidity of the proceedings preliminary to the sale, and at the sale itself, the act of Branner was in effect an attempt to purchase trust property from himself as trustee. While the deed was executed to Kuehne, it is clearly shown that he did not purchase the lot, did not pay any consideration for it, and did not receive any consideration when he subsequently made a deed to Branner. He simply took the deed and executed another at the instance of Branner, and for his accommodation. While upon the face of the proceedings it appeared to be a *bona fide* sale and an actual transfer of the lot, it was only a device by which Branner undertook to indirectly acquire title from himself as trustee, and was as much a violation of the fiduciary relation and as great a fraud in the eye of the law as though he had made a direct sale to himself. Whether the heirs of Kline knew that the sale to Kuehne was not a *bona fide* transaction until about the time this action was brought does not appear, nor is there any direct

2. Sale by fiduciary construed sale to himself.

testimony why Branner resorted to this means of obtaining the lot. It was shown that a fair price was obtained for the lot, but there being a manifest conflict between the duties of the trustee and his personal interests, the courts, for the purpose of removing all opportunity for fraud, generally hold such transfers to be void, whether they appear to be fair or not. The general rule is that the trustee is disabled from purchasing trust property, whether the purchase is made directly by himself or through another, and besides we have a legislative prohibition. Every administrator or guardian when he reports a sale of real estate is required to make an affidavit that ''he did not, directly or indirectly, purchase such real estate, or any part thereof, or any interest therein.'' Gen. Stat. 1897, ch. 107, §§ 132, 133 ;· ch. 108, §§ 17, 18. Proof of the making of these deeds was admitted in evidence, not for the purpose of showing a transfer of title, but only to aid the jury in determining whether Branner had acted openly and fairly in the settlement of the estate. The court having determined that the sale and deeds were void, there was no transfer of the title, and the plaintiff retained her interest in the property unless it has ·been otherwise transferred, or that by reason of her conduct she is estopped from asserting her title. On this question the court instructed the jury :

''If you find from the evidence in this case that in the disposition of this property by John S. Branner as the surviving partner of Branner & Kline he was acting in good faith, and that in disposing of it in the manner in which he did he procured the full value of the property, and that the proceeds of this property disposed of in the manner in which it was used in the payment of partnership debts, or that the fund created by this sale was carried into the general partnership fund by the surviving partner, and that the plaintiff knew of the manner in which this property had been

disposed of and acquiesced therein and received the proceeds of the sale through a settlement in 1892; then I instruct you that she would be estopped from asserting title to this property, and could not recover in this action, although the deed through which defendant claims is void."

In another instruction the jury were told that if the sale was made for the payment of partnership debts, and the money received was the fair value of the lot at the time, and that it went into the general partnership fund, and that thereafter Branner took possession of the lot and made lasting and valuable improvements thereon, "and that plaintiff knew of the manner in which this lot had been disposed of, and permitted Branner to make lasting and valuable improvements upon the premises and was present in person or by attorney in the probate court at the time the defendant made his final settlement as surviving partner, and that he reported at that time the manner in which this lot had been disposed of, and that a final settlement was then had, which settlement was accepted by plaintiff and she received the proceeds of this settlement; then and in that event I instruct you that she would be estopped from now asserting title to this property."

We think there is good reason to complain of these instructions. To constitute an estoppel which will prevent plaintiff from asserting title to her property, it must appear that she had full knowledge of the situation and of the facts bearing upon the invalidity of the transfer. She ought not to be concluded if she was ignorant of the facts upon which her rights are founded. One of the important facts is the knowledge that the sale to Kuehne was a pretense, and that Branner had in fact purchased the trust property for himself. On the face of the record, Kuehne appeared

3. Beneficiary not estopped from asserting title unless he know facts.

to be an actual purchaser, and so far as the testimony shows, the plaintiff did not know the real facts in the case at the time the alleged final settlement was made. If she had known of the violation of the trust in respect to the sale she might not have acquiesced in the settlement. A knowledge of that fact would naturally lead the plaintiff to scrutinize more closely the acts and doings of the trustee, and she would be less likely to accept his statements or rely upon the report which he made than if she had known that Kuehne was a mere instrument employed by Branner for the purpose of getting the property into his own hands.

What was said or done at the settlement can have had little effect on Branner. His improvements were made about ten years prior to the settlement and while the plaintiff was an infant. If at that time she had executed a deed to Branner for the property and had received the value of it, she would not have been estopped to claim the lot on attaining her majority. It appears that she was only twelve or thirteen years of age when the improvements were made, and therefore it cannot be said that Branner was induced to spend his money or part with the value of the improvements because of the representations of plaintiff or by reason of any acquiescence or ratification of his wrongful and invalid acts. The instructions omit any mention of knowledge by the plaintiff that Branner had fraudulently taken the title to himself, instead of making a *bona fide* sale to Kuehne; and they are also faulty in making it a ground of estoppel if the plaintiff knew of the manner in which the lot was disposed of and permitted Branner to make lasting and valuable improvements upon the premises. These improvements, as we have seen, were made during the infancy of plaintiff, and the facts stated as to the

4. Fact of improvements made will not estop beneficiary.

improvements, however extended her knowledge, would not conclude her.

The plaintiff's conduct at the settlement and since that time may be made the basis of an estoppel if the facts warrant one. She appeared at the settlement with her attorneys and resisted the allowance of the defendant's accounts. Notwithstanding her objections and resistance, the court found that there was due from her to the defendant $1,146.52. This amount she paid, and this is the basis of the claim of estoppel. Her action was brought about two years after the settlement was made. She is not seeking to recover the money back, but the defendant is insisting on the estoppel because she acquiesced in the settlement and paid the amount awarded against her. We are inclined to think, however, that if she with full knowledge of all the facts and circumstances took a credit for the purchase money of the lot in the settlement that was made, and afterward acquiesced in and ratified it by the payment of the amount awarded against her, she would be bound, and could not thereafter claim title to the property. On the other hand, if the defendant failed to act in good faith, and if by reason of his fraud and concealment the plaintiff was not aware of the real facts in the case, the estoppel would fail.

It having been determined that the deed was void, the estate of Kline cannot be regarded as settled, at least so far as the lot in question is concerned. An attempt was made to inquire into the settlement, and it was claimed that Branner in his accounting had given himself credit for the payment of a claim which had already been credited in his final settlement as administrator. Assuming that such was the fact, the court was asked to instruct the jury that if they found such credits aggregated $6,000, or more, they should

find that the plaintiff had not received the proceeds of the alleged sale by him of the undivided half of the lot in question. We think the instruction should have been given. If the final accounting and settlement are not binding on the plaintiff, and the estate is still open, a full inquiry should be allowed as to the good faith and honesty of Branner in administering his trust; and if the value of the lot has been wrongfully withheld from the plaintiff, it cannot be said that the lot has been paid for.

There is room to criticise the language of the court in speaking of the conduct of Branner in the settlement of the partnership estate. It is stated that there have been irregularities in the proceedings, and the court remarks that it would seem "that these irregularities have arisen, partly at least, by the misapprehension of the probate judge of this county as to what his duties were in relation to the settlement of partnership estates by a surviving partner, and partly by a misapprehension or misconception of the law in relation thereto by the surviving partner in regard to his duty with respect to the partnership property." On the part of the plaintiff it is claimed that there was more than a misapprehension or misconception of the law by the defendant; it is in fact contended that he acted fraudulently; but the instruction quoted would seem to exclude the idea that there was any fraud or wrong on the part of the defendant, and may have led the jury to think that the irregularities referred to were merely the results of mistakes of law. The good faith and honesty of Branner is an important consideration in the case, and especially where he claims an estoppel against the plaintiff, and we think, therefore, that the reference to misapprehension and misconception of the law may have been misleading.

For the errors pointed out the judgment will be reversed and the cause remanded for a new trial.