## JOHN S. BRANNER v. MILLIE NICHOLS.

No. 11,413. (59 Pac. 633.)

1. EJECTMENT—*Administrator's Sale—Partnership Estate—Fraud—Estoppel.* In an action to recover the possession of real estate sold by an administrator to pay debts of a partnership, and fraudulently bought in by him, and for rents and profits of the same received by the defendant for thirteen years, the latter averred in his answer a settlement of the partnership estate, of which he was surviving partner and administrator, an accounting and final discharge from his trust in the probate court, and the payment of over $3000 to the plaintiff, who was one of the heirs of the deceased partner. To avoid the effect of the estoppel so pleaded, the plaintiff replied that defendant had fraudulently used notes belonging to the partnership estate for the purchase of other real estate, the title to which was taken in his own name, and had sold different pieces thereof, and received $8000 per year rent for the same for about fifteen years; and in all his reports to the probate court had failed to charge himself with, or account for, said sales or rents, and purposely concealed the transaction, for the purpose of defrauding the plaintiff, until shortly before the commencement of the action. *Held,* that the allegations of the reply showed a lack of necessity for the sale of the property in controversy to pay partnership debts, and fraudulent concealment of facts, which avoided the estoppel pleaded in the answer.

2. ——— *Rents and Profits—Limitation of Action.* An administrator of a partnership estate purchased the lot in controversy, individually, which was sold by him under the orders of the probate court to pay partnership debts. Afterward he improved the same by erecting thereon a building, at a less cost however than the amount of profit he had derived out of other

Branner v. Nichols.

real estate bought by him with partnership assets.  Thirteen
years later one of the heirs of the deceased partner brought this
action for the recovery of an interest in the lot and for rents and
profits during said time, alleging matters stated above in the re-
ply.  *Held*, that the three-years' statute of limitations is not ap-
plicable to the case, and that plaintiff may recover rents and
profits of the property in its improved condition.

3. —— *Case Followed.*  The case of *Webb v. Branner*, 59 Kan.
190, 52 Pac. 429, cited and applied.

4. EVIDENCE—*Probate-court Proceedings.*  The trial court ad-
mitted in evidence a journal entry of an order of the probate court
setting aside the final report, settlement and discharge of an ad-
ministrator, and also, in connection therewith, the written peti-
tion or application on which the order was based.  *Held*, not
error.

5. PRACTICE—*Misconduct of Counsel.*  Misconduct of counsel for
the prevailing party in addressing the jury must be shown to the
trial court by affidavit on the hearing of a motion for a new trial.

Error from Jackson district court; LOUIS A. MYERS,
judge.  Opinion filed January 6, 1900.  Affirmed.

STATEMENT.

THIS was an action of ejectment tried in Jackson
county, the venue having been changed from Shawnee
county.  The plaintiff below alleged in the petition
that ever since October 7, 1875, she had been the
owner in fee simple and entitled to the possession of
an undivided one-fourth interest in lot 165, on Kansas
avenue, in the city of Topeka.  That since December
13, 1881, the defendant, John S. Branner, had unlaw-
fully and wrongfully kept her out of possession of the
same.  The second cause of action was for the recov-
ery of the use, rents and profits of said interest.

The amended answer of defendant below, John S.
Branner, contained three defenses, the first being a
general denial; the second an allegation that defend-
ant had been in the exclusive, continuous, and notori-
ous possession of the premises for more than fifteen

years prior to the commencement of the action under a claim of right, he being the legal and equitable owner thereof in fee simple, and that if plaintiff ever had any cause of action the same was barred by the statute of limitations; and the third, in substance, as follows:

On or about May 10, 1865, Oramel Griffin, who was at the time the owner of the property, executed and delivered to John S. Branner and Jacob Klein, as trustees, a deed of general warranty for the same. At the time of said conveyance John S. Branner and Jacob Klein were partners doing business as Branner & Klein, and defendant and Klein continued to own and hold said real estate as joint tenants until the death of Jacob Klein, on or about October 10, 1875. Jacob Klein left as his sole and only heirs plaintiff, Millie Nichols (then Millie Klein), and Josie Klein, now Josie Webb. At the time of the death of Jacob Klein there was a large amount of indebtedness outstanding against said partnership. Shortly after the death of Klein, defendant filed his bond, as provided by statute, as the surviving partner of the firm of Branner & Klein, and by reason thereof became the custodian and special trustee of all the property belonging to said firm.

Defendant, in the year 1881, as such surviving partner, under the order of the probate court of Shawnee county, sold the undivided one-half of said real estate for the sum of $3000, and by reason of defendant being the owner of the undivided one-half of the same and liable for an equal proportion of the indebtedness against the partnership, defendant accounted to the firm of Branner & Klein and charged himself as surviving partner on account of the sale of said lot with the sum of $6000, that amount representing the purchase-price of the whole of said lot 165. The property sold for a fair price. At the time of the sale there was due defendant by the firm of Branner & Klein, by reason of money advanced by him as surving partner in the payment of partnership debts, the sum of $2000. The unpaid debts of the firm at the time of the death of Jacob Klein

amounted to about $8000, which were due, and it became necessary to dispose of some property to meet said obligations, and lot 165 was the least productive and hence most available to sell at the time.  Said lot was unimproved, except that a small wooden building of little or no value was situated thereon. Defendant sold one-half of the property as aforesaid to Otto Kuehne for the consideration of $3000, with the understanding that the defendant would take the property from him at that sum.  He took a deed from Kuehne in good faith, and the conveyance to Kuehne having been approved by the probate court.  In his final account filed in the probate court in 1892, defendant charged himself with $6000, the purchase-price of the real estate, and used said consideration in the payment of legal debts of the firm of Branner & Klein.  By reason of said sale other real estate was prevented from being sacrificed for the payment of debts.  The money was used for the payment of debts of the firm in the years 1881 and 1882.

On or about the 20th day of April, 1892, the defendant, as surviving partner as aforesaid, made a final settlement with the heirs of Jacob Klein and filed his final account in the probate court of Shawnee county, Kansas, in which he charged himself with $6000 in the joint account of Branner & Klein with this defendant as surviving partner.  Plaintiff had full knowledge at the time of said settlement that $6000 was charged as the purchase-price of the real estate, and voluntarily received and accepted the same as such, which she has since retained.  Ever since the year 1881 defendant has paid taxes on the whole of said real estate as the owner thereof, amounting to the sum of $200 per year for the entire period. In 1887 and 1888, believing he had a good and perfect title, he erected a large and substantial three-story-and-basement brick and stone building on said lot at a cost of about $12,000, and has paid insurance on said property amounting to the sum of about $500, and has expended $500 in repairs.  Plaintiff had actual notice of said improvements and made no objection to their being made.  Plaintiff, by reason of

her long acquiescence in said sale and permitting said defendant to make lasting improvements, has forfeited any right she might have had from setting the sale aside, and is estopped from claiming any interest in the property. The purchase-price of the real estate (being $6000) was included in the final settlement with plaintiff, and defendant was indebted to her on account of the administration of said partnership estate in the sum of $3350.44, which amount plaintiff received from defendant long after said final settlement, and long after she had full knowledge that said amount of indebtedness had accrued and was created by reason of said sum of $6000, as the purchase-price of the real estate, being included in the final settlement.

At the time of the final settlement plaintiff, in person and by her attorneys, was represented, and defendant's report was fully investigated and considered by the probate court and by plaintiff and her counsel, and no objection was made thereto. The same was adjudicated and defendant ordered to pay the plaintiff the sum of $3350.44, which has been done, and no offer has been made by her to refund the same. At that time, and long prior thereto, plaintiff had full knowledge of the manner in which said property was sold, and that $6000 was charged against this defendant in his final account as the purchase-price of the real estate. The defendant's final report was approved by the probate court on or about the — day of April, 1892, and he was, by order of said court, fully released and discharged from his trust. Defendant has been in the actual and continuous possession of the real estate for more than five years prior to the commencement of this action. This suit was not commenced for more than five years after the recording of the deed executed by the surviving partner and administrator of said partnership estate.

The plaintiff replied to this amended answer, first, admitting that at the time of the commencement of the suit said defendant was in actual and exclusive possession, adverse to plaintiff, of lot 165; that title

to the property was derived as stated in the answer, the partnership of Branner & Klein, and the heirship of Josie Klein and Millie Klein, and denying all other allegations not admitted.  For a second defense, she alleged that John S. Branner never had any power or authority to make the deed to Otto Kuehne alleged in the answer; and for a third defense, that defendant never executed any good and sufficient deed to Otto Kuehne; and fourth, that the instrument alleged in the amended answer to have been executed to Otto Kuehne by John S. Branner, as surviving partner and administrator of said partnership estate, was fraudulently made by John S. Branner for the purpose of converting the property therein described to the use of the defendant; that said Kuehne received the deed on behalf of the defendant as his agent, and immediately thereafter, in pursuance of defendant's direction, made a deed of the property to defendant. The fifth defense was, in substance, as follows:

The accounts and settlements of defendant in the probate court, and the judgments and orders of the probate court, were fraudulently made and procured by the defendant under the following circumstances:  In all his accounts and settlements in the probate court defendant has treated the estate of Jacob Klein and the partnership as separate estates, and in all orders and proceedings with reference thereto, the probate court has also treated them as such.  On December 29, 1880, defendant rendered to the probate court his third and final account, which was then allowed, and an order discharging the defendant as administrator then entered on the records. Prior to said date, defendant filed an inventory and one annual account.  Branner continued to act as administrator of the partnership estate, and to hold and manage all the assets thereof, until February 22, 1892, when he presented his final account as administrator of said partnership estate, in which were in-

cluded various items, matters and transactions of his management as the guardian of the estate of plaintiff and her sister, whereby said account purported to be a final account of his administration of the estates of said plaintiff and her sister. In the final account defendant wilfully and falsely represented that, as administrator of said partnership estate, he had sold the undivided one-half of lot 165 to Otto Kuehne, when, in truth and in fact, he had sold it indirectly to himself.

At the time of the death of Jacob Klein there was due from Frederick Ortman to said partnership estate the sum of $500, which defendant did not include in his inventory as such administrator or surviving partner, but in December, 1876, took from Ortman a note due in one year, with twelve per cent. interest, payable to John S. Branner and John S. Branner, as administrator, which note was secured by a mortgage on land in Wabaunsee county. In November, 1879, he commenced an action in the district court on said note and to foreclose the mortgage. In the action John S. Branner and John S. Branner, as administrator, were plaintiffs. Afterward judgment was rendered, the land sold, and a sheriff's deed ordered to be made to John S. Branner and John S. Branner, administrator of the estate of Jacob Klein, deceased. Defendant, by an erasure in the sheriff's return, secured a deed to himself in his individul capacity, and in March, 1882, sold the land and received $2500 therefor. For the purpose of defrauding plaintiff and her sister, he unlawfully concealed and omitted to include in any of his accounts to the probate court the proceeds of said note and mortgage.

On November 5, 1877, there were in the hands of defendant as administrator of the partnership estate three promissory notes executed by Frederick Ortman and secured by a mortgage on real estate in the city of Topeka, including lot 167 and the north twenty feet of lot 169 on Kansas avenue. The notes, with interest to February 7, 1878, amounted to $7101.47. There were liens on said real estate prior to the mortgage, amounting, on that date, to $13,000, but the real

estate was worth much more than that sum. On November 5, 1877, defendant in his own name instituted an action in the district court on said notes and mortgage and made the prior lien-holders defendants. He recovered a judgment in his favor for $7101.47, and said prior lien-holders recovered a judgment in the same suit, the latter having priority. In December, 1878, all of the real estate was sold for the sum of $14,157. Sale was confirmed and a sheriff's deed executed to John S. Branner on January 27, 1879. Said action was brought by Branner for the fraudulent purpose of acquiring title to the mortgaged premises for his own use and benefit, at the cost and expense of said partnership estate. Pursuant to said fraudulent purpose Branner, at the sheriff's sale, took advantage of the effect which his judgment lien for $7101.47 had in deterring other persons from bidding, and bought in the real estate at a price barely sufficient to cover the prior lien, whereby he acquired the legal title to the real estate without cost or expense to himself individually, and by the use of the funds and property of the partnership estate. From the rents of the real estate and from other assets of said partnership defendant received, long prior to 1892, and still holds, much more than the amount necessary to pay off said liens, but has never paid or extinguished the same. More than $13,000 thereof now subsist as mortgage-liens on said property. Immediately after obtaining the title defendant sold and conveyed a part of said property, and has ever since collected and received the rents of a portion thereof remaining unsold. In March, 1882, he sold and conveyed lot 117 and received therefor $2800. In January, 1881, he sold and conveyed lots 99 and 101 and received therefor the sum of $300. Ever since January 27, 1879, defendant has received for rents of said lot 167 and the north twenty feet of lot 169 about $8000 for each year.

For the purpose of defrauding plaintiff and her sister, defendant has purposely and fraudulently concealed and failed in all the accounts heretofore rendered by him to the probate court to charge himself with, or in

any manner account for, the money so received from the proceeds of the sales of said real estate or for the rents of the same.   At the time of the alleged settlement there was in the hands of the defendant, of the proceeds of said partnership estate, more than $50,000, which he has not in any manner accounted for as administrator of said partnership estate or as guardian of the estate of plaintiff and her sister.   All the orders of the probate court which have been made concerning said alleged settlement, and all receipts and acknowledgments of satisfaction which have been made or given by the plaintiff at and since the alleged settlement, have been procured by the defendant fraudulently and by means of false representation.   The plaintiff did not discover any of the frauds of defendant heretofore stated, and that his said account and representations were untrue, until after January 1, 1894.   All of the final accounts and settlements, and all of the orders of the probate court approving said final accounts and releasing and discharging defendant from his trust as guardian, administrator, or surviving partner, were by said probate court, in June, 1898, upon a regular trial and full hearing, vacated and set aside for frauds perpetrated by defendant in making and procuring the same.

A trial was had, the issues being submitted to a jury, which returned a verdict in favor of plaintiff for $4742.20, and in addition thereto answered certain particular questions of fact, as follows :

"1.  Did the defendant herein, John S. Branner, charge himself, as surviving partner, with the sum of $6000, as the purchase-money for lot No. 165 on Kansas avenue, in the city of Topeka, Kan., and report the same in his final report as surviving partner, filed in the probate court of Shawnee county, Kansas, on or about the 20th day of April, 1892?   Ans.  Yes.

"2.  Did the partnership firm of Branner & Klein receive the benefit of $6000 as the purchase-money for lot No. 165 on Kansas avenue in the city of Topeka, Shawnee county, Kansas, in the final settlement of

John S. Branner, as surviving partner of said firm?
A.  No.

" 3.  Was the said $6000 purchase-money for lot No.
165 on Kansas avenue in the city of Topeka, Kan.,
used by said John S. Branner, as surviving partner,
towards the payment of the debts of the partnership
firm of Branner & Klein?   A.  No.

" 4.  Did John S. Branner, as surviving partner of
the firm of said Branner & Klein, wilfully or inten-
tionally purchase, or become the owner, of lot No.
165 on Kansas avenue in the city of Topeka, Shawnee
county, Kansas, for the purpose of wilfully or inten-
tionally defrauding the plaintiff herein, as one of the
heirs of Jacob Klein, deceased?   A.  Yes.

" 5.  Was $6000 a full and fair price for said lot No.
165 on Kansas avenue in the city of Topeka, Shaw-
nee county, Kansas, at any time during the year 1881?
A.  Yes.

" 6.  What was the fair and reasonable market
value of said lot No. 165 on Kansas avenue in the
city of Topeka on 13th and 14th days of December,
1881?   A.  No evidence.

" 7.  Did J. B. Whitaker represent the plaintiff,
Millie Nichols, and her sister, in and about the mak-
ing of the final settlement in the probate court of
Shawnee county, Kansas, on and prior to the 20th
day of April, 1892?   A.  Yes.

" 8.  Did J. B. Whitaker, on and prior to the settle-
ment made in the probate court of Shawnee county,
Kansas, on or about the 20th day of April, 1892, have
knowledge of the manner in which the undivided one-
half (½) of lot No. 165 on Kansas avenue in the city
of Topeka, Shawnee county, Kansas, was transferred
to Otto Kuehne, and afterwards transferred by Otto
Kuehne to John S. Branner, the defendant herein ?
A.  He had knowledge of the record.

" 9.  Did J. B. Whitaker investigate the title to all
of the Branner property, including lot No. 165 on
Kansas avenue in the city of Topeka, Shawnee county,
Kansas, prior to the date of the settlement in the pro-
bate court of Shawnee county, Kansas, and prior to
the 20th day of April, 1892 ?   A.  Yes, partially.

"10. Did J. B. Whitaker investigate the title to lot No. 165 on Kansas avenue, Topeka, Kan., prior to the date of the settlement in the probate court of Shawnee county, Kansas, and prior to the 20th day of April, 1892 ? A. Yes, he investigated the record title.

"11. Did J. B. Whitaker advise with and notify the plaintiff herein of the defect in the title to lot No. 165 on Kansas avenue in the city of Topeka, Shawnee county, Kansas, as the same was conveyed to Otto Kuehne and afterwards conveyed by said Otto Kuehne to John S. Branner ? A. Yes, in 1894.

"12. Did J. B. Whitaker, as the representative of the plaintiff herein, advise the plaintiff herein, on or prior to the 20th day of April, 1892, that the defendant, John S. Branner's, title to lot No. 165 on Kansas avenue in the city of Topeka, Kan., was invalid, and in his opinion she and her sister, Josie Webb, could recover the undivided one-half of said lot No. 165 on Kansas avenue, Topeka, Kan., on account of said invalidity or defects in said title? A. No.

"13. Did J. B. Whitaker, as the representative and attorney of the plaintiff herein, on and prior to the 20th day of April, 1892, inform the plaintiff, that from his investigation of the title to said lot No. 165 on Kansas avenue, Topeka, Kan., he was satisfied that said John S. Banner was really the purchaser at his own sale, and that the party bidding off the property in the first instance was not a *bona fide* purchaser, but a mere bidder for the accommodation of John S. Branner? A. No.

"14. Did J. B. Whitaker and Senator Martin, as the representatives of the plaintiff herein, at and prior to the 20th day of April, 1892, talk and consult with each other in reference to the question of the defect in John S. Branner's title to lot No. 165 Kansas avenue, Topeka, Kan., and whether plaintiff herein could recover any interest in said lot? A. No.

"15. If you answer the above question in the affirmative, then did said J. B. Whitaker and said Senator Martin, on or prior to the 20th day of April, 1892, as the representatives of said plaintiff, also talk with and

consult with said plaintiff in reference to the invalidity of the title of John S. Branner to said lot No. 165 on Kansas avenue in the city of Topeka, Kan.? A. No answer.

"16. At the time of the final settlement in the probate court of Shawnee county, Kansas, upon the filing of the final report of John S. Branner, as surviving partner, did J. B. Whitaker and Senator Martin examine said report and ascertain and know that said John S. Branner had reported, in his said final report, $6000 as the purchase-price of said lot No. 165 on Kansas avenue, Topeka, Kan.? A. Whitaker did. No evidence as to Martin.

"17. In the final settlement between John S. Branner, and Millie Nichols and Josie Webb, heirs of Jacob Klein, deceased, in the probate court of Shawnee county, Kansas, made on or about the 20th day of April, 1892, was the said $6000 allowed by said probate court as a credit to said Millie Nichols and Josie Webb and charged against the said surviving partner, John S. Branner? A. Yes.

"18. After the final settlement between John S. Branner as surviving partner, and Millie Nichols and Josie Webb, heirs of Jacob Klein, deceased, made in the probate court of Shawnee county, Kansas, on or about the 20th day of April, 1892, did John S. Branner pay to the said Millie Nichols the amount found due by the probate court in said settlement to said Millie Nichols from said John S. Branner? A. Yes.

"19. After the final settlement between John S. Branner as surviving partner of the firm of Branner & Klein, and Millie Nichols and Josie Webb, made in the probate court of Shawnee county, Kansas, on or about the 20th day of April, 1892, did John S. Branner and said Millie Nichols settle in accordance with the terms of the said decree of the probate court of Shawnee county, Kansas, and did Millie Nichols receive the amount found due her by said probate court from said John S. Branner? A. Yes."

"22. If you find that John S. Branner did cheat, wrong or defraud the plaintiff herein in the sale and purchase of said lot 165, please state in what particu-

lar he did so.  A.  He presented false accounts and kept money and property belonging to the plaintiff.

"23.  If you find that the defendant, John S. Branner, failed to report any money in his final settlement in the probate court of Shawnee county, Kansas, made as hereinbefore mentioned, state the amount of such money, and from what source said money was derived.  A.  About ($30,000) thirty thousand dollars from rents and sales of real estate.

"24.  If you find that the defendant, John S. Branner, failed to report any personal property other than money in his final settlement in the probate court of Shawnee county, Kansas, which should have been reported in said final settlement, as surviving partner, please state what property was so omitted by said defendant, and describe the same.  A.  No evidence.

"25.  If you find that the defendant in the above-entitled cause failed to report any real property in his final settlement as surviving partner, in the probate court of Shawnee county, Kansas, which should have been reported, please state what property was so omitted, and describe the same, and state its reasonable value at the time the said settlement was made.  A. Lots 165–167 and north 20 feet of lot 169 Kansas avenue, and 40 acres ; and the tract 25 by 70 feet on Kansas avenue, ($75,000) seventy-five thousand dollars."

"27.  In the final settlement made on or about the 20th day of April, 1892, by John S. Branner, in the probate court of Shawnee county, Kansas, as surviving partner of the firm of Branner & Klein, did the probate court find and adjudicate how much money was due from the said John S. Branner to the plaintiff herein, and if you find that it did so find and adjudicate, please state the amount?  A.  Yes. ($3350$\frac{44}{100}$) thirty-three hundred and fifty and $\frac{44}{100}$ dollars.

"28.  After the defendant herein, John S. Branner, had made his final report and settlement as surviving partner of the firm of Branner & Klein, in the probate court of Shawnee county, Kansas, on or about the 20th day of April, 1892, did the plaintiff herein, Millie Nichols, and John S. Branner settle in accordance

with said report, and has said John S. Branner paid to the said Millie Nichols, the plaintiff herein, the full amount found due to her by the decree of said probate court?  A.  Yes.

"29.  After the making of the final settlement by John S. Branner, as surviving partner of the firm of Branner & Klein, in the probate court of Shawnee county, Kansas, on or about the 20th day of April, 1892, and after the bringing of this action, has the plaintiff herein, Millie Nichols, been accepting and receiving the amount of money so found due to her by said probate court of Shawnee county, Kansas, in said final settlement?  A.  Yes, in allotments of fifty dollars per month.

"31.  At the various times that the plaintiff herein, Millie Nichols, has received portions of the money so found due her by the probate court of Shawnee county, Kansas, in the final settlement of John S. Branner, made in said probate court on or about the 20th day of April, 1892, did said plaintiff, Millie Nichols, know what said money was paid to her for, and by whom the same was paid?  A.  Yes."

"33.  When the plaintiff, Millie Nichols, at various times received the amount of money found due her from John S. Branner by the probate court of Shawnee county, Kansas, in his final settlement, made on or about the 20th day of April, 1892, did the plaintiff receive the same knowing why it was paid her?  A. Yes."

*Isenhart & Alexander*, and *Wm. R. Hazen*, for plaintiff in error.

*Keeler & Hite*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. :  The first error assigned is the refusal of the court below to strike out certain parts of the reply.  They charge fraudulent conduct by Branner in foreclosing a mortgage securing a note for $500,

24—61 KAN.

belonging to the partnership estate on land in Wabaunsee county, obtaining title in his own name, selling the same, and failing to report the transaction to the probate court; and, again, that in 1877, there was in Branner's hands, as administrator of the partnership estate, three promissory notes aggregating over $7000, secured by mortgage on lot 167 and the north twenty feet of lot 169 on Kansas avenue, in Topeka, and other real estate, which mortgage was subject to about $13,000 of prior mortgage liens; that Branner had foreclosed this mortgage, bid in the property at the sheriff's sale in his own name, and subsequently sold different pieces of real estate so obtained, and ever since January, 1879, has received rents for the lots above described amounting to about $8000 per year, and that for the purpose of defrauding the plaintiff he purposely concealed the transaction, and in all his reports to the probate court failed to charge himself with, or account for, said sales or the rents received from said lots.

These allegations in the reply, which defendant below sought to have eliminated, were designed to avoid the force and effect of the estoppel pleaded by Branner in the answer, and containing, as they do, direct charges of fraudulent concealment, tend to excuse the plaintiff in her delay (if any excuse be necessary) in bringing the action. It cannot be said that a side issue was imported into the case by these averments in the reply by which Branner was required to litigate a collateral matter. He set out in his amended answer conduct of the plaintiff constituting an estoppel. By way of avoidance, she alleged his fraudulent acts and their concealment. We can see no error in the ruling of the court below.

Counsel for plaintiff in error reiterate the state-

ment many times in their brief that the action was purely legal in its nature as distinguished from a suit in equity.  We differ with them in this contention.  The pleadings taken together show that the case is an equitable one.  The plaintiff below asserts in the petition that she is the owner in fee simple of the property, but from the subsequent pleading it appears that the naked legal record title was in Branner and her title was equitable.  In the case of *A. T. & S. F. Rld. Co. v. Pracht*, 30 Kan. 66, 71, 1 Pac. 323, it was said :

" Perhaps, before proceeding further, it would be well to state that in Kansas an action in the nature of ejectment, or, in other words, an action for the recovery of real property, is equitable as well as legal ; and that upon the trial in such an action either party may prove any kind of title which he may have, legal or equitable, and that judgment will be rendered in favor of the party holding the paramount title, whether such title be legal or equitable."

Under a claim of legal title we think a plaintiff may offer proof of an equitable one, and if such title be paramount it will prevail.

Defendant below asked the court to instruct the jury that in no event could a recovery be had against him for rent beyond a period three years prior to the commencement of the action.  The request was refused. Authorities are cited holding that a cause of action for rents and profits, although joined with one in the nature of ejectment, is founded upon an implied contract, and that the three-year statute of limitations applies to such claims.  The rule stated is not applicable to this case.  Here the property which belonged to the heirs of Jacob Klein, subject only to the payment of debts, was sold without necessity for the payment of claims against the firm of Branner and

Klein.    Other assets of the partnership sufficient in
amount existed to pay such debts, but they were held
by Branner in his own name, and their existence
fraudulently concealed from the plaintiff below.
(*Young v. Whittenhall*, 15 Kan. 579 ; *Main v. Payne*,
17 id. 608 ; *Duffitt v. Tuhan*, 28 id. 292.)

The cause of action dating from the discovery of the
fraud, it becomes immaterial to consider the effect of
the plaintiff's reaching her majority more than three
years before the commencement of the suit.    Branner
was administrator of the partnership estate and also
the guardian of Millie Nichols, the plaintiff below, un-
til about two years before the action was commenced,
and it is alleged that the fraud was not discovered un-
til after January 1, 1894.    In *Webb v. Branner*, 59
Kan. 190, 52 Pac. 429, it was held that the sale of lot
165 in December, 1881, was absolutely void and fraudu-
lent in law, and that Branner by his purchase got no
title.    Since that time he has placed improvements on
the property, and the judgment below included the
rents for such improvements.    Plaintiff in error con-
tends, if liable at all, he can only be charged with the
rent of the lot in the condition it was in when he pur-
chased it, in December, 1881.    We think otherwise.
Defendant below concedes in his amended·answer that
he bought the lot at his own sale, and by this admis-
sion, viewed in the light of the decision in *Webb v.
Branner*, supra, he confesses to a violation of the
fiduciary relation and to ''a great fraud in the eye of
the law.''    The jury found that Branner failed to re-
port to the probate court in his final settlement the
amount of $30,000 derived from rents and the sales of
real estate, and that he failed to report real estate as
surviving partner of the value of $75,000.    It would
be a denial of justice to forbid the Klein heirs to re-

cover the rents and profits of improvements on their real estate erected with funds which, if properly accounted for, should have been paid to them long ago. (*Austin v. Barret*, 44 Iowa, 488.)

Counsel for plaintiff in error insist that the purchase of the property by Branner, the administrator of the partnership estate, at his own sale, is not void, but at most only voidable at the election of the heirs. This question was set at rest in *Webb v. Branner*, supra. The court below did not err in admitting in evidence the petition filed by the plaintiff below to set aside the final report and settlement of Branner. The order vacating the discharge was admissible without doubt, and the application on which it was made we think was proper to be introduced. It was in the nature of a pleading on which a judgment was rendered. (9 Encyc. Pl. & Pr. 625, and note). It was proper for the jury to have before them the issues on which the order was made. Nor do we think the admission in open court by counsel for defendant below that the final settlement was set aside prevented the adverse party from introducing formal proof of that fact.

The alleged misconduct of counsel for plaintiff below in his remarks to the jury cannot be considered. There was no showing of such misconduct on the hearing of the motion for a new trial in the manner required by statute. (Gen. Stat. 1897, ch. 95, § 319; Gen. Stat. 1899, § 4572; *A. T. & S. F. Rld. Co. v. Rowan*, 55 Kan. 270, 39 Pac. 1010.)

The prominent feature of the case, to which all others are subordinate, involves the conduct of Branner, while he was administrator and surviving partner of the partnership estate of Branner & Klein, in selling the lot in question for the payment of partner-

ship debts when there were other assets of the firm sufficient to pay the same which he fraudulently used for his own profit and advantage, concealing his acts from the plaintiff below and her sister.    The payment to Mrs. Nichols of $3350.44 after the final report made to the probate court of the sale of lot 165 could work no estoppel against her if there were other assets of the partnership in the hands of Branner of which she was ignorant which ought to have been applied in discharge of partnership debts, with the resulting effect of rendering unnecessary a sale of the real estate in controversy.    This controlling question was decided adversely to the plaintiff in error, and we cannot say that the verdict is not supported by abundant evidence.

The issues made by the pleadings were well defined. They were determined by the jury in favor of the defendant in error, and the jury's conclusions approved by the trial court.    The judgment will be affirmed.