### N. F. FRAZIER v. CLARA A. JEAKINS.

**No. 12,503.**  (68 Pac. 24.)

SYLLABUS BY THE COURT.

1. TRUSTS AND TRUSTEES—*Profit by Trustee.* Trustees for the sale of land will not be permitted directly or indirectly to make profit for themselves out of the trust estate.

2. GUARDIAN AND WARD—*Purchase by Guardian, or his Wife, or her Husband.* The guardian of the property of a minor cannot legally buy it at his own sale, nor can his wife or her husband. If they do, the non-existence of fraud and the payment of full consideration will not validate the purchase.

3. ———— *Proper Practice Suggested.* It seems that if a guard-

ian, or her husband or his wife, wishes to buy at the guardian's sale, the proper practice would be to obtain leave of court to do so, upon a showing of reasons therefor.

4. ———— *Confirmation of Sale—Res Judicata.* The confirmation of a guardian's sale is *res judicata* as to irregularities only, and not as to matters of substance.

5. ———— *Notice Imparted by Recitals in Deed.* A deed that recites that the grantors are husband and wife, the names of which grantors are identical with those of the grantor and grantee in a recent guardian's deed of the same land, imparts notice to the purchaser that his grantors were also husband and wife at the date of the former deed.

6. ———— *Title Does not Pass to Purchaser with Notice.* The title of land sold and deeded by a guardian to her husband does not pass to a purchaser who has notice of their relationship, and ejectment for its recovery may be maintained by the ward.

Error from Butler district court; C. W. Shinn, judge. Opinion filed March 8, 1902. *In banc.* Affirmed.

*Buck & Spencer*, for plaintiff in error.

*Redden & Kramer*, for defendant in error.

The opinion of the court was delivered by

Doster, C. J. : This was an action of ejectment to recover land which had descended to a minor upon the death of her ancestor, but which had been wrongfully sold and conveyed by the minor's guardian. Serena J. Jeakins, the owner of the land, died intestate, leaving as her heirs a husband and children. One of the latter was Clara A. Jeakins, a minor. The others were adults. Mrs. Permilly Scheel was appointed guardian of the property of the minor and thereafter maintained the ward at her expense. She purchased the interests of the adult heirs in the land, taking conveyances therefor in her own name. She procured from the probate court an order to sell the minor's interest in payment of the cost of her main-

tenance, and she sold this interest at private sale to her husband, Carl Scheel; the sale was confirmed and the guardian's deed approved. Some claims of fraud in making the sale and of lack of full consideration for the land are made by counsel, but we do not take a view of the case which requires us to advert to them. We shall treat the sale as made on fair consideration and free from fraud in fact.

About three years after the guardian's sale, Mrs. Scheel and her husband sold the entire tract to N. F. Frazier. The record of proceedings in the probate court did not disclose the relationship existing at the time of the guardian's sale between Permilly Scheel, the guardian, and Carl Scheel, the purchaser, but Frazier knew they were then husband and wife. Besides, the deed he received from them recited their relationship, and the identity of names in that deed with those of the grantor and grantee in the guardian's deed imparted a notice which is the equivalent of knowledge. (15 A. & E. Encycl. of L. [2d ed.] 918.) A purchaser of land is always chargeable with the knowledge of whatever facts are suggested by the recitals in his title papers. (*Knowles v. Williams,* 58 Kan. 221, 48 Pac. 856.)

5. Notice from recitals in deed.

Clara A. Jeakins brought ejectment against Frazier to recover her undivided interest in the land. Although the cause of action stated was not joined with one for partition, the defendant made no objection in the court below on the ground of the irreclaimableness of undivided interests by cotenants. Upon the argument of the case in this court, counsel for Frazier disclaimed a desire to raise the question, and, therefore, we are not concerned with any doubts which may exist as to the right to maintain the action. Certain it is that objections to its maintenance, if any can be

properly made, do not go to the jurisdiction of this court. Judgment went for plaintiff in the court below, and the defendant has prosecuted error.

The sole question in the case relates to the validity of the guardian's sale and deed of the land of her ward to her husband, made, as before stated, upon fair consideration, and free from actual fraud. Are they valid? If not, are they of the class denominated "void," and, therefore, subject to collateral attack? Our judgment is that they are void, and their nullity being known to Frazier, the purchaser, no title passed to him, and, therefore, the collateral action will lie.

Nothing in the law of fiduciary trusts is better settled than that the trustee shall not be allowed to advantage himself in dealings with the trust estate. He shall not be allowed to serve himself under the pretense of serving his *cestui que trust.* The most usual way in which evasions of this salutary rule are attempted is in purchases of the trust estate by, or in the interest of, the trustee. That such purchases shall not be allowed the realization of their purpose is the universal holding of the courts, and a citation to the multitudinous decisions would encumber an opinion more than it would elucidate the rule. A large number of the cases are collected in the notes to *Tyler v. Herring,* 19 Am. St. Rep. 263 (67 Miss. 169, 6 South. 840); *Tyler v. Sanborn,* 15 Am. St. Rep. 97 (128 Ill. 136, 21 N. E. 193, 4 L. R. A. 218); *Wilson v. Brookshire,* 9 L. R. A. 792 (126 Ind. 497, 25 N. E. 131); and this court, in *Webb v. Branner,* 59 Kan. 190, 52 Pac. 429, recently added another to the list. Nor, in such cases, does the fact that the sale and purchase were *bona fide* and upon full consideration avail to constitute an exception to

1. Trustee may not purchase trust property.

the rule.   That was distinctly so declared in *Webb v. Branner*, supra, in which it was said :

"It was shown that a fair price was obtained for the lot, but there being a manifest conflict between the duties of the trustee and his personal interests, the courts, for the purpose of removing all opportunity for fraud, generally hold such transfers to be void, whether they appear to be fair or not."

The above-quoted remarks imply that there may be, perhaps, exceptions to the rule, but we know of none. In fact, the main rule that a trustee may not profit himself out of the trust estate is no better settled than the subsidiary one that lack of fraud in the trustee's dealings will not validate the transaction.   The fiduciary relation of trustee and *cestui que trust* is one which does not call so much for rules to redress accomplished wrong as for rules to prevent its accomplishment.   The one in question, therefore, is not intended to be merely remedial of wrong actually committed, but, rather, to be preventive, or deterrent, in effect.   The opportunities which are open to an unfaithful trustee to advantage himself out of the trust estate are so many and so tempting, and the condition of the beneficiary in the trust ordinarily so helpless and confiding, that the law gives warning in advance against all transactions out of which it is possible for the former to make gain at the expense of the latter. Hence, as was tersely and wisely said by Chief Justice Beasley, in *Staats v. Bergen*, 17 N. J. Eq. 554: "So jealous is the law upon this point, that a trustee may not put himself in a position in which to be honest must be a strain on him."

Do the foregoing considerations apply to a sale by a guardian of the ward's land to the guardian's husband or wife, as the case may be ?   We have no hesi-

tation in affirming that they do. It is
true that the common-law fiction of the
legal identity of the husband and wife
and the very nearly complete merger of the latter in
the former does not now have recognition. In this
state, as allowed by statute, the wife may contract
with her husband. They may own separate estates
free from any present claim of interest by one in the
property of the other—that is, as against the other;
but it is not true that, as to their respective posses-
sions, they are strangers in such sense as to take a
trustee's sale by one to the other from out the opera-
tion of the rule in question. Upon the death of either
of them, one-half of his or her property descends, un-
der the statute, to the survivor, and under the statute
neither one, without the other's consent, can, by will,
devise more than one-half his or her property. It
is true the interest of the one in the property of the
other is contingent and uncertain, and dependent upon
survivorship. It is true that the interest of the one
in the land of the other is not of the character of any
of the estates known to the common law, but it never-
theless possesses the elements of property. This was
distinctly so ruled in *Busenbark v. Busenbark*, 33 Kan.
572, 7 Pac. 254; and, on the strength of the quality
of property attaching to the inchoate interest of a
wife in her husband's land, she was allowed in that
case to maintin an action to prevent its fraudulent
alienation.

However, over and beyond that property interest
which husband and wife have in each other's estate,
and which possesses the element of pecuniary value,
there is a larger consideration. It was well expressed
by counsel for defendant in error, who said:

"The affection existing between husband and wife,

*Margin note: 2. Rule applies to sale to husband or wife.*

the marital relation which in a sense makes them one, the implicit confidence which each must have in the other, their natural desire for each other's material prosperity, the relation which enables one to derive and enjoy personal comfort and pleasure from the property of the other, independent of the question of direct or indirect ownership in such property, are all so well recognized in law and understood by all civilized people, that it would be arguing against the experience of centuries to contend that one would not be interested in the welfare of the other, and do all that could be done to enhance the pecuniary interests of the other; therefore, by reason of the relation, no guardian could be impartial in the sale to husband or wife of the property of the ward.''

In *Tyler v. Sanborn*, supra, the supreme court of Illinois, after adverting to the fact that under the statutes of their state husband and wife may contract with each other, that the wife may own property separate from the husband, but that each has contingent interests in the other's property dependent on survivorship (the same being in such respects substantially like our statute), and after holding that such mutuality of interest forbade one to sell trust property to the other, further remarked:

''There is, moreover, apart from this pecuniary interest, an intimacy of relation and affection between husband and wife, and of mutual influence of the one upon the other for their common welfare and happiness, that is absolutely inconsistent with the idea that the husband can occupy a disinterested position as between his wife and a stranger in a business transaction. He may, by reason of his great integrity, be just in such a transaction; but unless his marital relations be perverted, he cannot feel disinterested—and it is precisely because of this feeling of interest that the law forbids that he shall act for himself in a transaction with his principal.

''It is believed to be within general observation and

experience that he who will violate a trust for his own pecuniary profit will not hesitate to do it, under like circumstances, for the pecuniary profit of his wife. In our opinion, the policy of the law equally prohibits the wife of the agent, as it does the agent himself, from taking title to the property which is the subject of his agency without the knowledge and express consent of the principal."

One of the earliest cases on this particular question was *Davoue v. Fanning*, 2 Johns. Ch. 252. In that case, it appeared that an executor had sold the testator's property to a person to be held by him in trust for the executor's wife. Chancellor Kent held that the sale could not stand, because, as he said, "whether the trustee buys in for himself or his wife, the temptation to abuse is nearly the same." In *Dundas's Appeal*, 64 Pa. St. 325, it appeared that an executor had sold part of the testator's estate to his wife. The court said:

"We cannot doubt that a sale by a trustee to his own wife would be set aside on the application of the *cestui que trust*, not on the ground of coverture, but of her relationship to the trustee. It would be evidence of unfairness quite as much as if the sale were made to the trustee himself, and falls within the spirit of the rule which forbids his own purchase."

However, in that case the sale was allowed to stand, because the court by previous order had permitted the wife to become a bidder. The making of such precedent order was admitted to be within the authority of the court, but it was said: "The power is a delicate one and should always be cautiously exercised, and the sale itself watched with jealousy."

In *Bassett v. Shoemaker*, 46 N. J. Eq. 538, 20 Atl. 52, 19 Am. St. Rep. 435, it appeared that an executor had sold to his wife a farm of the testator. It was held

that the sale should be set aside, as of course, upon the application of a *cestui que trust*. Among other things it was said:

"The exclusion of the wife as a purchaser, where the husband sells as a trustee, is not so much for the reason that he may subsequently become entitled to some interest in her lands, as on account of the unity which exists between them in the marriage relation. The case falls clearly within the spirit of the principle which excludes the husband himself."

There are other cases the decisions of which were more or less influenced by the considerations expressed in the foregoing quotations. (See *Riddle & Parker v. Roll et al.*, 24 Ohio St. 572; *The Rome Land Company v. Eastman et al.*, 80 Ga. 683, 6 S. E. 586; *Bachelor v. Korb*, 58 Neb. 122, 78 N. W. 485, 76 Am. St. Rep. 70.)

Admit the separate legal status of husband and wife to be as absolute and clearly differentiated as their physical lives, there is yet, as a matter of fact, an identity of interests and affections between them which utterly precludes the idea of a trustee's sale by one to the other being different in effect than a sale by the trustee to himself. To say that a husband acting in a fiduciary capacity in effecting a sale would be disposed, as against his wife, to diligence of effort in finding some one who would pay more for the trust estate than she would, is to fly in the face of nature itself and deny the experience of the ages. Nor can we conceive of any reason why it might be different in the case of a wife, were she the trustee negotiating the sale.

To the rule declared by us there is but one opposing decision, so far as we are aware. It is *Crawford v. Gray*, 131 Ind. 53, 30 N. E. 885. The sale in

question in that case was made at public auction to the wife as the highest bidder, differing in that respect from the sale under consideration by us. The opinion fails to cite any cases in its support, and, if it can be considered as applicable to private sales by trustees, we have no hesitation in declaring it unsound in principle and opposed to all the authorities.

There may be exceptional circumstances justifying sales by trustees to their wives or husbands, or even to the trustee himself. It is said that the sale under consideration was one of the exceptional character. The wife owned all the other interests in the land and therefore could effect a better sale to her husband, as a cotenant to be, than to a stranger. The claim is a
<span style="float:left">3. Proper practice suggested.</span> reasonable one, but for such cases the law has a practice which must be followed; it is to apply to the court controlling the sale for leave to purchase. That was ruled in *Dundas's Appeal*, supra, and *Bassett v. Shoemaker*, supra. In *Michoud et al. v. Girod et al.*, 4 How. (U. S.) 503, 557, 11 L. Ed. 1076, one of the leading authorities on the subject of purchases by trustees at their own sales, the supreme court of the United States, considering the proper practice in such cases, ruled:

"It is, that when a trustee for one not *sui juris* sees that it is absolutely necessary that the estate must be sold, and he is ready to give more for it than any one else, that a bill should be filed, and he should apply to the court, by motion, to let him be a purchaser This is the only way he can protect himself. There are cases in which the court will permit it."

It is said, however, that the confirmation of the sale by the probate court was a judicial approval of it
<span style="float:left">4. Order of confirmation—res judicata.</span> which put it in the category of *res judicata*, and hence beyond collateral attack. The law in this state does not give such

an effect to a mere order of confirmation.   The act concerning guardians and wards (Gen. Stat. 1901, § 3290) appropriates, as the rules governing guardian's sales, those prescribed by the statute relating to sales made by executors and administrators.   This latter statute (Gen. Stat. 1901, § 2937) reads as follows :

"And the court, after having carefully examined such return (the return of sale), and being satisfied that the sale has in all respects been legally made, shall confirm the sale, and order the executor or administrator to make a deed to the purchaser."

The above-quoted statute does not differ in any substantial particular from the statute in relation to the confirmation of sales by the district court, as such statute existed prior to 1893.   The civil code, section 458 (Gen. Stat. 1889, ¶ 4556) provided that

"If the court  .  .  .  shall, after having carefully examined the proceedings of the officer, be satisfied that the sale has in all respects been made in conformity to the provisions of this article, the court shall direct the clerk to make an entry on the journal that the court is satisfied with the legality of such sale, and an order that the officer make to the purchaser a deed for such lands and tenements."

Whatever may be the law in other states, in this one it is settled that under the statute last quoted the order of the court confirming the sale becomes *res judicata* as to irregularities only and cures nothing of substance—certainly not, unless the matter of substance is exhibited on the face of the sale proceeding itself. This has been the uniform holding since *Koehler v. Ball*, 2 Kan. 161, 83 Am. Dec. 451.   In *De Jarnette v. Verner*, 40 Kan. 224, 19 Pac. 666, it was ruled that

" Where a sheriff's sale of real estate has been made, and the owner thereof moves to set aside the sale for the reason that the property was not sold for two-

40—64 KAN.

thirds of its appraised value, and for other reasons, and the motion is overruled by the court and the sale confirmed, he does not thereby waive his right to afterward treat the sale as void, or to sue the sheriff for any injury which he may have sustained by reason of such sale. By being a party to a motion to set aside or confirm a sheriff's sale, which motion is decided against such party, he does not thereby and for the future waive or cure anything of substance, but only irregularities.''

We come now to the final question : Was the sale void in the sense that it was subject to collateral attack ? Our judgment is that it was ; and inasmuch as its nullity was known to Frazier, the purchaser, no title passed to him, and therefore the collateral action will lie. We do not understand that courts by their use of the term ''void'' always mean that utter negativeness which is the equivalent of non-existence, but they more often mean that which, relatively to persons, circumstances, conditions, or forms of action, may be treated as though it were non-existent. In this latter sense there is little distinction between it and the word ''voidable.'' Really, as often used in the law, there is an interchangeability of meaning between the two words. This is well pointed out in *Ewell v. Daggs*, 108 U. S. 148, 2 Sup. Ct. 408, 27 L. Ed. 682 ; *Pearsoll v. Chapin*, 44 Pa. St. 15 ; *Kearney et al. v. Vaughn et al.*, 50 Mo. 287 ; *Brown v. Brown*, 50 N. H. 542. Therefore, in order to characterize the guardian's sale and deed as ''void,'' in the sense in which that word is most frequently used in the law, it is not necessary to regard them as inexistent. They have a form of existence and, under certain circumstances, they may be allowed or may acquire the substance of existence. The plaintiff in this case might have ratified them by

6. Collateral attack —ejectment.

express act or deed ; she might have estopped herself
by some course of conduct to question their validity, or
she might have allowed lapse of time to bar her right
to recover on the score of their invalidity ; but until,
by ratification, estoppel, or limitation, she has given
effect to them, she is privileged to treat them as void,
and of no effect.  As to her, they are void and of no
effect, because they failed to pass the title to her land.
In order to characterize an act or transaction as void,
it is not necessary that it should be a nullity as to
everybody and for all time and under all circum-
stances.  If the act or transaction failed to deprive
interested persons of their rights or titles, failed to
confer them on some one else, the act or transaction
is void as to such persons.  If the act or transaction
requires ratification, estoppel or limitation to transfer
the right or title, it is void until the ratification has
been made, the estoppel has occurred, or the time has
elapsed, and even then the right or title does not pass
by virtue of the original act or transaction, but passes
by virtue of the ratification, or is founded on the es-
toppel, or is set at rest by the lapse of time.

The authorities seem to us strong and convincing
that ejectment, although a collateral proceeding, will
lie to recover a title claimed under a trustee's sale to
himself, or in effect to himself, as in this case.  In
*Den, ex dem. Obert v. Hammel,* 3 Harr. (N. J.), 73, it ap-
peared that an administrator had masked a purchase
by himself under the form of a sale and conveyance to
another.  The transaction was attacked through eject-
ment by an heir of the estate.  The court ruled that
the sale was fraudulent in law and therefore void,
and might be shown to be such in a law action with-
out compelling the heir to go into equity.  In *McKay
v. Williams,* 67 Mich. 547, 35 N. W. 159, 11 Am. St.

Rep. 597, it appeared that an attorney in fact had executed a deed to the land of his principal and on the same day took back from the grantee a deed to himself, and a few weeks thereafter conveyed the land to another. It was held that the deed by the attorney and the deed back to him were *prima facie* fraudulent and void on their face; that they did not show that title had passed; that they imparted notice to the subsequent purchaser, and that title could be recovered in ejectment. Many of the cases are reviewed in the opinion. In *Winter v. Traux*, 87 Mich. 324, 49 N. W. 604, 24 Am. St. Rep. 160, the same holding was made in a case identical in all its facts with *McKay v. Williams*, except that the sale was made by a guardian instead of an attorney in fact.

Now, in this case, as hereinbefore shown, the deed under which Frazier claimed showed on its face the relationship existing between Scheel, the guardian, and Scheel, the purchaser at her sale—that is, it contained a recital sufficient to charge him with notice. *This was sufficient.*

The judgment of the court below is affirmed.

JOHNSTON, SMITH, GREENE, ELLIS, POLLOCK, JJ., concurring.

CUNNINGHAM, J. (dissenting): I would be false to my convictions if I failed to announce my dissent to the conclusion reached by the majority of the court in this case.

It is admitted that the sale by the guardian to her husband was free from actual fraud, so that the question presented is, Can a sale be made for a full consideration, in the best of faith, by a husband or wife, acting in a fiduciary capacity, to the consort? My brethren say not, and that such sale is not only void-

able but absolutely void, and can be avoided by any one in interest at any time without tendering or paying back the consideration received. I do not find ground for that conclusion in reason or authority.

I find no fault with the proposition that an agent or trustee cannot sell to himself. Such a sale is void —is no sale; for one cannot sell to himself. The same person cannot be seller and purchaser at the same time; but that principle finds no application to the facts at bar, although the opinion of the court seems to be based largely upon it.

Nothing is more strongly fixed in Kansas law, both by statutory provision and judicial decision, than that, so far as property rights and interests are concerned, husband and wife are as distinct as though they were strangers. The statute provides that a married woman may deal with her property, real or personal, and enter into any contract with relation to the same, in the same manner and to the same extent and with like effect as a married man may in relation to such property. While in the marital relation, her property remains to her sole and separate use to the same extent as though she were not married. She may sue, and is liable to be sued, in the same manner as if she were unmarried. She may carry on any trade or business, perform any labor or services on her sole account, and the earnings arising from such trade, business, labor or services are her sole and separate property and may be exclusively used and invested by her in her own name. She may deal with her husband, with respect to her property, exactly as though she were a stranger to him; and in all these respects our common, everyday observation gives us to know that these privileges are frequently exercised by and between those occupying the marital relation. Although our ancestors

feared that great calamities might come were these things to exist, thus far we see no indications of the heavens falling or the social fabric collapsing because of them. This court in many cases has sustained to the fullest the rights of a married woman in these respects.

What logic is there in the claim that the wife may legally sell and convey her own property to her husband while acting for herself, and at the same time condemn, as utterly void and of no force whatever, a like conveyance made by her in the best of faith and for a full consideration, when she is acting in a fiduciary capacity for another? And especially, how out of harmony with logic is such conclusion when we couple with it the thought that such sale has passed the scrutiny and received the commendation and approval of a court vested with full jurisdiction to supervise and order such sale! I am free to say that in my opinion such sale is perfectly valid, and is not even voidable.

The only case to which we are cited, of a similar nature to the one at bar, is *Crawford v. Gray*, 131 Ind. 53, 30 N. E. 885, which was a case where a wife purchased at an executor's sale conducted by her husband and another as executors. No fraud or collusion was there charged, and it was there urged, as here, that the wife could not become the purchaser because of considerations growing out of her relation to the executor. The court, at pages 54 and 55, in part said:

"Under the law of this state, as it is now and was at the time of this sale by the executors and purchase by the appellee, the wife had quite as distinct and individual an existence relating to her right to contract for and purchase real estate and take title in her own name, and hold, use and enjoy the same, as did her husband.

"She has the same right to invest her own money in the purchase of real estate as her husband, and regardless of the will of her husband. When once the title is vested in her, true she cannot convey or encumber the same except by deed in which her husband joins, but there are no restrictions on her right to purchase and take title in herself. This she can do without his aid or consent, and he has no legal power to restrain or prevent her from doing so.

"At the executors' sale the land was offered at public auction. In offering the land for sale the executors were acting under and in pursuance of an order of court. All who desired had the right to bid and become purchasers. The wife of one of the executors having the right to use her individual means as she willed, she had the same right to bid and become a purchaser in good faith as did any other individual, and to authorize an agent to act for her and bid the land off for her, and take title in her own name. Before the purchase the wife had no interest in the land. The husband was acting in a fiduciary capacity; it was not necessary that the wife join him in a deed to pass title. The title was not even in the husband. It was the title which the testator held at his death that the executors conveyed to the wife. There is no fraud charged upon the part of either the appellee or the executors, or any collusion between the appellee and her husband."

In *Tyler et al. v. Sanborn et al.*, 128 Ill. 136, 21 N. E. 193, 15 Am. St. Rep. 97, 4 L. R. A. 218, cited in the majority opinion, the court held that a sale like the one herein described was voidable, not wholly void, from which conclusion the chief justice and Mr. Justice Bailey dissented, and from this dissenting opinion I quote (pages 146 and 147):

"It is assumed in the opinion of the majority of the court, and I think correctly, that no fraud in fact is shown, the decision being based wholly upon the assumption that there was such fraud in law as must necessarily invalidate the transaction. I make no

question as to the soundness of the doctrine that an agent employed by another to sell his property cannot, either directly or indirectly, become the purchaser, and that, if he does so, his principal may interpose and avoid the sale. But that is not this case. The purchaser here was not the agent, but another person, who was *sui juris*, and capable of acquiring, owning and controlling her separate property wholly independent of any control or interference on the part of her husband.

"The opinion treats the purchase by the wife as being the same in legal effect as though made by the husband. This doubtless would be the case if the wife were still laboring under the disabilities imposed by the rules of the common law. But our statute has so far emancipated her from those disabilities as to place her in all essential respects in the same legal position, so far as property rights are concerned, as though she were a *feme sole*. Her separate estate is no longer subject to either the rights or the control which, at common law, resulted to the husband from the marital relation. She now has the same control over her estate that her husband has over his. She has the same legal power to acquire property, to buy and sell, or engage in business, she would have if she were unmarried. In respect to property rights and business transactions she is, in contemplation of law, a stranger to her husband, and may act independently of him, or assume a position adverse to his."

But perhaps I do violence to the argument contained in the majority opinion in assuming that the conclusion reached grows of necessity out of the marital relation. I am not sure but the argument is that it grows out of the close personal interests based upon this relation, as that seems to be the idea running through the quotation from the brief of counsel for the defendant in error, and also the quotation from *Tylor v. Sanborn*, supra. This consideration would be very potent if the question were one of actual fraud.

The relation of husband and wife is, indeed, or should be, one of the closest and most intimate known to humanity, and it generally is so, but not always.  It is not infrequent that the relation of parent and child, brother and brother, or even friend and friend, is more intimate and confidential, especially in relation to property, than that of husband and wife.  How can we say, as a matter of law, that a sale in the one case would be good and in the other absolutely void ?

My brethren by this decision say that no matter how adverse the interests of husband and wife actually are, how antagonistic and at arms' length their dealings may be, all this cannot be considered when one acting as a trustee comes to sell the trust estate to the other ; that the sole fact that the relation of husband and wife exists between them makes the transaction, as a matter of law, fraudulent and void, which as a matter of fact is not fraudulent, but for the highest interest of the *cestui que trust*.  Could legal absurdity be carried further ?

But granting that a sale made by husband or wife in a fiduciary relation to the consort is voidable, I most strenuously insist that such sale, having received the approbation of a court which had full jurisdiction of the parties and the subject-matter, is not so absolutely void as to be disregarded upon a collateral attack.  It is granted in the majority opinion that an attack by an action in ejectment is a collateral one.

In this case, we find that the guardian duly appointed by the probate court filed a petition, in all respects regular, in that court ; received its proper legal order to sell the minor's interest in the real estate involved ; that such real estate was sold for a full consideration, without any fraud ; that such sale was

reported to the court, and the court, after due consideration, presumably knowing all of the facts relative thereto, confirmed the sale, and directed the issuance and delivery of a deed to the purchaser. In doing so, it at no point exceeded its jurisdiction. It, following the supreme court of Indiana, held that the sale was good. Admit, in this it was wrong; that it should have held with the supreme court of Illinois that it was voidable; or admit, following this court, now for the first time in this country announcing that such sale was void, the probate court adjudged that it was good, surely this adjudication was not void, even though the sale was. If the court was wrong, it was but an error of law, and we revolutionize all of our ideas concerning the inviolability of the orders and judgments of courts of competent jurisdiction when we say that such an order may be disregarded upon a collateral attack.

The statute (section 133 of the executors' and administrators' act, Gen. Stat. 1901, § 2938) says of a deed executed as was the one in this case that it shall "be received in all courts as presumptive evidence that the executor or administrator in all respects observed the directions and complied with the requisitions of the law, and shall vest the title in the purchaser in like manner as if conveyed by the deceased in his lifetime."

Is it possible that this statute goes for naught, and in a collateral attack all errors committed by the court in ordering such deed may be brought to light? I confess myself unable to say where such a rule will lead us. The authorities opposing such rule are so abundant that I shall not cite them.

Let us illustrate: A guardian, being ordered to dispose of a minor's property for his sustenance, educa-

tion, or other proper purpose, makes a sale to the husband or wife for a full consideration ; the consideration is paid and the sale is confirmed ; every one has acted in the best of faith and in the honest belief that the law has been in all respects fully complied with ; and the money received by the guardian is expended for the purposes desired.  Some years thereafter the ward brings an action in ejectment.  The purchaser, without being recompensed in any manner for the money paid by him, is wholly deprived of his title, as it will be remembered that the court in this case holds that such a sale is absolutely void, and, if so, no necessity for a tender or repayment exists as a prerequisite for recovery.  I have searched the books in vain to find warrant or authority for such injustice. None of the cases cited in the majority opinion goes to that extent.  It is only where a trustee sells to himself — that is, where there is no sale — that this rule obtains.

Take, for instance, the case of *Tyler v. Sanborn*, supra, where an executor sold to his wife.  Such sale was held to be voidable only, the court directing that the conveyance should be canceled upon repayment of the amount received by the executor with interest thereon.

In the case of *Davoue v. Fanning*, 2 Johns. Ch. 252, which is the leading case in this country, where the executor caused lands to be purchased for the benefit of his wife, such sale was ordered to be set aside upon condition that the consideration money be repaid.  The same is true in the case of *Riddle & Parker v. Roll et al.*, 24 Ohio St. 572.  In the other cases cited where sales were held void, the sale was made by the trustee to himself or indirectly in his interest.

It is urged in this case that the form of the action is such that the setting aside of the sale cannot be conditioned upon an equitable adjustment of the price paid. If this be so, so much the worse for the plaintiff. It was she who selected the form of the action. Surely the defendant ought not to be wronged, because she selected such an action as would not permit him to be dealt with honestly. I do not believe the plaintiff ought to be permitted to recover the land and retain the price honestly paid for it.