## BURTON v. COMPTON.

No. 5012.   Opinion Filed July 27, 1915.

(150 Pac. 1080.)

1. **GUARDIAN AND WARD—Sale of Ward's Land—Validity.**
Where a guardian of a minor sells his ward's real estate to his
own wife, **held,** that the deed is void, regardless of the absence
of fraud, the adequacy of price, or the apparent regularity of the
proceedings. Such transactions are prohibited by statute and
condemned by public policy. And, the sale being forbidden by
statute, the deed is void, because it lacks both the sanction
and the authority of the law.

2. **SAME—Rights of Purchaser—Notice.** One who purchases from
the vendee of a guardian's sale must take notice, at his peril,
of the authority of the guardian to make the sale; and if suf-
ficient facts appear, or are suggested by the record, in connec-
tion with other circumstances which are brought to his notice,
to put a reasonably prudent man on inquiry, and he neglects to
make such inquiry, he will be held to have actual knowledge of
the channel through which his grantor claimed title, and that
her grantor in the guardian's deed, under which she held, was
in fact her husband.

3. **SAME—Void Sale—Rights of Third Persons.** Where a guardian's
deed is void, and the sale under which it was executed a nullity,
and the right of no innocent third person has intervened, the
deed and sale under which it was executed may be attacked
collaterally.

(Syllabus by Brett, C.)

*Error from District Court, Pottawatomie County;*
*Chas. B. Wilson, Jr., Judge.*

Action by Oliver P. Compton against S. D. Burton
and another. Judgment for plaintiff, and defendant Bur-
ton brings error. Affirmed.

*G. A. Outcelt,* for plaintiff in error.

*Baldwin & Carlton,* for defendant in error.

Opinion by BRETT, C.   This action was commenced
in the district court of Pottawatomie county by Oliver P.

Compton, defendant in error, as plaintiff in that court, against S. D. Burton, plaintiff in error, and Lulu Stark, *nee* Lulu Cooney, as defendants in that court, claiming a one-fifth undivided interest in certain lands described in the petition, and certain rents and profits on same, and praying for a partition thereof, basing his rights to recover upon the ground that in 1899 he was a minor, and the owner of a one-fifth undivided interest in said described lands; that one M. J. Cooney, now deceased, was his guardian; that in 1902, pursuant to an order of sale issued out of the probate court of Pottawatomie county, M. J. Cooney, as guardian, sold said tract of land to Lulu Cooney, who was the wife of the guardian M. J. Cooney; that subsequently, in 1908, Lulu Cooney conveyed the land to defendant, S. D. Burton, who has ever since held the record title and been in possession of the land. A stipulation entered into admits all the facts above pleaded, and, in addition, admits that the deed from Lulu Cooney to S. D. Burton shows "Lulu Cooney, widow," to be Burton's grantor. The case was tried to the court without a jury, and the court sustained plaintiff's contention, declaring the guardian's deed to Lulu Cooney, in so far as it affected the interests of the plaintiff, Oliver P. Compton (the parties will be referred to as they appeared in the lower court), to be void; that defendant Burton took his deed from Lulu Cooney with notice—and granted the relief sought by the plaintiff. And this judgment and decree of the court is brought here for review.

Counsel in stating the issues before this court says there are but two questions:

"First. Is the sale of real estate by a guardian void if the purchaser at said sale was the wife of the guardian?

Second.   Can the judgment of the county court ordering and confirming the sale be collaterally attacked?"

But we think the real issues are:   First, Was the guardian's deed to his wife, Lulu Cooney, void? and, second, Did S. D. Burton take his deed from Lulu Cooney with notice, or was he an innocent purchaser? and, third, Can the probate sale be collaterally attacked?

The first proposition is before this court for the first time.   Yet it is an old question, and has been passed upon repeatedly.   And, as far as we know, Indiana stands alone in upholding such deeds.   In 1781, long before there was any statute upon the subject, Lord Chancellor Thurlow of England, in *Fox v. Mackreth,* 2 Leading Cases in Equity (White and Tudor) 722, held:

"That trustees expose themselves to great peril in allowing their own relatives to intervene in any matter connected with the execution of the trust; for the suspicion which that circumstance is calculated to excite, where there is any other fact to confirm it, is one which it would require a very strong case to remove."

And he says, in substance, that the rule rests upon public policy, and such a purchase will not be permitted in any case, however honest the circumstances; for the general interest of public justice requires it to be destroyed in every instance, and that:

"From general policy and not from any peculiar imputation of fraud, a trustee shall remain a trustee to all intents and purposes."

And our statute (section 6409, Revised Laws 1910) says:

"No executor or administrator must directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale."

But the defendant (plaintiff in error) insists that this transaction was free from fraud, and that the price paid was adequate. That might all be true in this particular case, but the law looks beyond the circumstances of any individual case; for as said in *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24, 57 L. R. A. 575:

"The opportunities which are open to an unfaithful trustee to advantage himself out of the trust estate are so many and so tempting, and the condition of the beneficiary in the trust ordinarily so helpless and confiding, that the law gives warning in advance against all transactions out of which it is possible for the former to make gain at the expense of the latter."

And for this reason the Legislature has fixed this statutory rule which removes both the temptation and opportunity to do wrong. And the courts can make no distinction in the application of the rule between the honest and the dishonest. And whether the transaction be free from fraud or not is immaterial to the issue in the case. It is a transaction prohibited by the statute and condemned by public policy.

And the fact that the common-law disabilities of the wife have been removed, and under our statutes she is a *feme sole* and can buy and sell in her own name, does not, by any means, divorce the mutual interest she and her husband have in each other's property. In case of the death of the one, the other would inherit not less than one-third of his or her estate. And it would be strange indeed if this alone did not lead them to do all in their power to enhance the pecuniary interests of each other. And where the wife purchases the property of her husband's *cestui que trust*, to say that the husband is not interested in that sale, and has not directly nor

indirectly purchased the property of that estate, seems to us to be absurd. Besides, as well said in *Tyler v. Sanborn*, 128 Ill. 136, 21 N. E. 193, 4 L. R. A. 218, 15 Am. St. Rep. 97:

"There is, moreover, apart from this pecuniary interest, an intimacy of relation and affection between husband and wife, and of mutual influence of the one upon the other for their common welfare and happiness, that is absolutely inconsistent with the idea that the husband can occupy a disinterested position as between his wife and a stranger in a business transaction. He may, by reason of his great integrity, be just in such a transaction, but, unless his marital relations be perverted, he cannot feel disinterested; and it is precisely because of this feeling of interest that the law forbids that he shall act for himself in a transaction with his principal. It is believed to be within general observation and experience that he who will violate a trust for his own pecuniary profit will not hesitate to do it, under like circumstances, for the pecuniary profit of his wife."

And for that reason the law forbids a trustee to put himself in a position where either his integrity may be questioned, or his inclination to dishonesty may be indulged. The sale by the guardian to his wife was forbidden, and the deed is therefore void, because it lacks both the sanction and the authority of the law. The relationship of guardian and ward is purely a creation of the statute. And the acts of a guardian are solely dependent upon statutory authority for their validity; and acts which are prohibited by the statute, or which are performed by a guardian without statutory authority, are void, and of no more binding force or validity than would be the act of a mere intermeddler or stranger. *Davoue v. Fanning*, 2 Johns. Ch. (N. Y.) 252; *Appeal of Dundas*, 64 Pa. 325; *Bassett v. Shoemaker*, 46 N. J. Eq. 538, 20

50—13

Atl. 52, 19 Am. St. Rep. 435; *Riddle v. Roll*, 24 Ohio St. 572; *Rome Land Co. v. Eastman*, 80 Ga. 683, 6 S. E. 586; *Bachelor v. Korb*, 58 Neb. 122, 78 N. W. 485, 76 Am. St. Rep. 70; *Busenbark v. Busenbark*, 33 Kan. 572, 7 Pac. 245; *Cooper v. Burns et al.* (C. C.)' 133 Fed. 398; also *Burns et al. v. Cooper*, 140 Fed. 273, 72 C. C. A. 25; *Veeder v. McKinley-Lanning Loan & Trust Co.*, 61 Neb. 892, 86 N. W. 982.

2. Then the next question is, Was the defendant, S. D. Burton, an innocent purchaser? Mrs. Cooney executed her deed to him as "Lulu Cooney, widow." The deed of M. J. Cooney, as guardian, to Lulu Cooney was before him, and was suggestive. And the slightest inquiry would have disclosed the fact that M. J. Cooney, the grantor of Lulu Cooney in the guardian's deed, was her husband. And *Cooper v. Flesner et al.*, 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29, holds that:

"One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received."

And in *Creek Land & Improvement Co. v. Davis*, 28 Okla. 579, 115 Pac. 468, it is held that:

"A purchaser of lands takes them with constructive notice of whatever appears in the conveyances which constitute his chain of title; and, if sufficient appears therein to put a prudent man on inquiry, which would, if prosecuted with ordinary diligence, lead to actual notice of a right or title in conflict with that he is about to purchase, and he fails to make such inquiry, the law

will charge him with the actual notice he would have received if he had made it."

See, also, *Herbert v. Wagg et al.*, 27 Okla. 674, 117 Pac. 209; *Brooks v. Reynolds*, 37 Okla. 767, 132 Pac. 1091.

Besides it is a well-established rule that one who purchases at a guardian's sale, or one who purchases from the vendee of a guardian's sale, must take notice, at his peril, of the authority of the guardian to make the sale.

And, applying these rules to the case at bar, we think Mr. Burton must be charged with actual notice of the channel through which his grantor claimed title, and the relationship existing between her and her grantor, and is, therefore, not an innocent purchaser.

3. Then the only remaining question is, Could the guardian's sale be attacked collaterally? Since the deed was void and the sale a nullity so far as this plaintiff is concerned, and the rights of no innocent third persons intervened, we think there is no question but what it was open to collateral attack. *Frazier v. Jeakins, supra,* is a very able and well-considered opinion, and the facts in that case are almost identical with the facts in the case at bar, and the court in that case held that the sale of the guardian was subject to collateral attack, and says, if the guardian's deed failed to deprive the minor of his rights and title, and failed to confer them on any one else, the deed was void as to the minor; and if the deed required ratification, estoppel, or limitation to transfer the title—

"it is void until the ratification has been made, the estoppel has occurred, or the time has elapsed, and even then the right or title does not pass by virtue of the original act or transaction, but passes by virtue of the ratification,

or is founded on the estoppel, or is set at rest by the lapse of time. The authorities seem to us strong and convincing that ejectment, although a collateral proceeding, will lie to recover a title claimed under a trustee's sale to himself, or in effect to himself, as in this case."

And quotes in support of this proposition extracts from the following cases: *Obert v. Hammel,* 18 N. J. Law, 73; *McKay v. Williams,* 67 Mich. 547, 35 N. W. 159, 11 Am. St. Rep. 597; *Winter v. Truax,* 87 Mich. 324, 49 N. W. 604, 24 Am. St. Rep. 160.

*Obert v. Hammel, supra,* holds that:

"A fraudulent deed may be invalidated in a court of law, if the fraud can be sufficiently proved. Executors, administrators, guardians, or trustees intrusted with the sale of real estate can never sell it to themselves, either directly and openly, or secretly and covertly through another person employed for the purpose."

And the other cases cited are to the same effect.

We think the judgment appealed from is correct, and recommend that it be affirmed.

By the Court: It is so ordered.