## CHASTAIN et al. v. PENDER et al.

No. 5631.   Opinion Filed November 2, 1915.

(152 Pac. 833.)

1. **EXECUTORS AND ADMINISTRATORS—Sale of Estate—Validity—Husband and Wife.** The administrator of an estate cannot legally sell the same to his wife.

2. **SAME—Right to Purchase—Heirs—Wife of Administrator.** The statutes of this state prohibit an administrator of an estate from selling the same to his wife, even though she be one of the heirs to the estate.

3. **SAME—Validation of Deed.** A purchase of real estate by the wife of an administrator, at the administrator's sale, is held to be void as against the heirs of the estate. But such a deed may be made effective, as against the heirs, by ratification, estoppel, or limitation; and, where this occurs, the title does not pass by virtue of the original transaction, but passes by virtue of the ratification, or is founded on estoppel, or is set at rest by the lapse of time.

4. **SAME—Setting Aside Sale—Refunding of Money Paid.** On the setting aside of a purchase by the wife of the administrator, if it should develop at the trial that she and the administrator have acted in good faith in making said purchase, and have taken no unfair advantage therein, that the transaction was free from fraud, and that the proceeds of said sale have been expended in defraying the necessary expenses of the administration, or in paying the legal and enforceable indebtedness against the estate, then she should have the purchase money refunded to her.

(Syllabus by Mathews, C.)

*Error from Superior Court, Tulsa County;*
*M. A. Breckenridge, Judge.*

Action by Beulah Pender and others against Edward
Chastain and another. Judgment for plaintiffs, and de-
fendants bring error. Reversed and remanded.

*H. B. Schaeffer* and *Jno. F. Kerrigan,* for plaintiffs
in error.

*A. J. Biddison* and *Harry Campbell,* for defendants
in error.

Opinion by MATHEWS, C. The parties will be
designated here as in the court below. On January 11,
1910, the plaintiff, Beulah Pender, filed an action in
ejectment against Edward Chastain, Nevada Chastain,
Nick Eaton, Leonora Eaton, and Chester Eaton, a minor,
seeking to obtain possession of certain realty. It appears
from the record, as disclosed by the pleadings, that on
March 3, 1907, Sarah J. Eaton died, seised of the realty
in controversy. On December 16, 1908, one S. G. Pen-
der, the husband of Beulah Pender, was appointed ad-
ministrator of the estate, and on the 3d day of June,
1909, the said administrator, under an order of the
probate court, sold the realty to plaintiff, Beulah Pender,
at private sale for $350. The said Beulah Pender and
all of the defendants were children of the said Sarah
J. Eaton, except Edward Chastain, who is the husband
of Nevada Chastain. The said sale was approved by
the said probate court, and the deed duly executed by
the said administrator conveying said premises to plain-
tiff, Beulah Pender. Defendants answered plaintiffs'
petition, setting out several grounds of defense; but, as
we view this case, it will be necessary to consider
but one of the same. Defendants attack the adminis-
trator's deed to said property upon the ground that the
administrator, being the husband of Beulah Pender, the

purchaser, could not legally sell the same to his wife, and that said deed, on this account, was void and ineffectual to pass the title to the said Beulah Pender. Having filed their answer, the court, upon motion of plaintiffs, rendered judgment for plaintiffs upon the pleadings. From this action of the court in rendering judgment upon the pleadings, the defendants Nevada Chastain and Edward Chastain appealed, and have assigned error based on the aforesaid proposition that a sale by an administrator to his wife is void. In answer to this contention of defendants, the plaintiffs urge that the administrator sold the land of plaintiff Beulah Pender's mother, in which she had an heir's interest, and that she had a right to protect that interest by bidding thereon at the sale so as to make the land bring what she thought its value was, and even to purchase it, if she was willing to bid higher for the land than others.

We find the usual wide diversity of judicial opinions from the various states of the Union upon every legal phase presented in the case at bar.

1. As to the first proposition presented, whether the husband administrator can sell the estate to his wife, we need look no further than the well-considered opinion of *Burton v. Compton,* 50 Okla. 365, 150 Pac. 1080, where we find this question answered in the negative. We quote therefrom:

"The first proposition is before this court for the first time. Yet it is an old question, and has been passed upon repeatedly. And as far as we know, Indiana stands alone in upholding such deeds. In 1781, long before there was any statute upon the subject, Lord Chancellor Thurlow of England, in *Fox v. Mackreth,* 2 Leading Cases in Equity (White and Tudor) 722, held: 'That

trustees expose themselves to great peril in allowing their own relatives to intervene in any manner connected with the execution of the trust; for the suspicion which that circumstance is calculated to excite, where there is any other fact to confirm it, is one which it would require a very strong case to remove.' And he says, in substance, that the rule rests upon public policy, and such a purchase will not be permitted in any case, however honest the circumstances, for the general interest of public justice requires it to be destroyed in every instance, and that: 'From general policy and not from any peculiar imputation of fraud, a trustee shall remain a trustee to all intents and purposes.' And our statute (section 6409, Rev. Laws 1910) says: 'No executor or administrator must directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale.'·

"But the defendant (plaintiff in error) insists that this transaction was free from fraud, and that the price paid was adequate. That might all be true in this particular case, but the law looks beyond the circumstances of any individual case; for, as said in *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24, 57 L. R. A. 575: 'The opportunities which are open to an unfaithful trustee to advantage himself out of the trust estate are so many and so tempting, and the condition of the beneficiary in the trust ordinarily so helpless and confiding that the law gives warning in advance against all transactions out of which it is possible for the former to make gain at the expense of the latter.' And for this reason the Legislature has fixed this statutory rule which removes both the temptation and opportunity to do wrong. And the courts can make no distinction in the application of the rule between the honest and the dishonest. And whether the transaction be free from fraud or not is immaterial to the issue in the case. It is a transaction prohibited by the statute and condemned by public policy. And the fact that the common-law disabilities of the wife

have been removed, and under our statutes she is a
*feme sole* and can buy and sell in her own name, does
not, by any means, divorce the mutual interest she and
her husband have in each other's property. In case of
the death of the one, the other would inherit not less
than one-third of his or her estate. And it would be
strange indeed if this alone did not lead them to do all
in their power to enhance the pecuniary interests of each
other. And where the wife purchases the property of
her husband's *cestui que trust,* to say that the husband
is not interested in that sale, and has not directly nor
indirectly purchased the property of that estate, seems
to us to be absurd. Besides, as well said in *Tyler v.
Sanborn,* 128 Ill. 136, 21 N. E. 193, 4 L. R. A. 218, 15
Am. St. Rep. 97: 'There is, moreover, apart from this
pecuniary interest, an intimacy of relation and affection
between husband and wife, and of mutual influence of
the one upon the other for their common welfare and
happiness, that is adsolutely inconsistent with the idea
that the husband can occupy a disinterested position as
between his wife and a stranger in a business transac-
tion. He may, by reason of his great integrity, be just
in such a transaction, but, unless his marital relations
be perverted, he cannot feel disinterested; and it is
precisely because of this feeling of interest that the law
forbids that he shall act for himself in a transaction
with his principal. It is believed to be within general
observation and experience that he who will violate a
trust for his own pecuniary profit will not hesitate to do
it, under like circumstances, for the pecuniary profit of
his wife.' And for that reason the law forbids a trustee
to put himself in a position where either his integrity
may be questioned, or his inclination to dishonesty may
be indulged. The sale by the guardian to his wife was
forbidden, and the deed is therefore void, because it
lacks both the sanction and the authority of the law.
The relationship of guardian and ward is purely a
creation of the statute. And the acts of a guardian are
solely dependent upon statutory authority for their val-

idity; and acts which are prohibited by the statute, or which are performed by a guardian without statutory authority, are void, and of no more binding force or validity than would be the act of a mere intermeddler or stranger."

For further authorities see that case.

2. Plaintiffs next contend that, as Beulah Pender was one of the heirs to the estate, she had the right to become the purchaser in order to protect her own interest. There are a respectable line of authorities that support this contention; but, in the face of our statute (section 6409, Rev. Laws 1910) which directly and positively forbids it and makes no exception to the rule, even in the case of one who has an interest in the property to protect, as in the case at bar, recognizing the wise provision of this law, we do not feel that we are authorized to read into the same the exception thereto which plaintiffs here insist upon. We admit that there may be individual instances where the law may work a hardship and injustice upon parties who have acted in good faith and dealt fairly in the transaction, but rather than lay down a rule that might open up a field of fraud and give an opportunity to designing persons to plunder and exploit trust estates, we deem it wise to let the door remain closed and the statute unqualified.

The case of *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24, 57 L. R. A. 575, by Chief Justice Doster, is a judicial opinion of unusual strength and merit, is based upon a statute identical with ours, and is decisive of every question raised in the case at bar, being almost a blanket case, but the equities in that case were much stronger in favor of the losing party than they are to the plaintiff here. In that case the owner of a tract of land died,

leaving as heirs several children, one of whom was a minor. The party who was appointed guardian of the minor, having purchased the interest of the adult heirs in the land, obtained from the probate court an order to sell the minor's interest to pay the cost of the minor's maintenance, and sold the same at private sale to her husband. Three years afterwards, the entire tract was sold to a third party, who had no knowledge of the relationship of the parties except as disclosed by the deed. In an action in ejectment brought by the said minor, after reaching majority, the court treated the sale as made for a fair consideration and free from fraud in fact, but nevertheless held the guardian's deed void.

3. Here the question naturally recurs, Is the deed under consideration in the case at bar void, or voidable? 18 Cyc. 328, says:

"A purchase by an executor or administrator at his own sale is usually held to be not void, but merely voidable at the option of those interested, but where the transaction is tainted with actual fraud, it is void."

Also 18 Cyc. 771:

"A purchase of property of the estate by an executor or administrator at a sale under order of court, while universally considered to be highly improper, is usually held to be merely voidable at the election of the persons interested, and not void."

In the case of *Burton v. Compton, supra*, such a deed is held absolutely void and subject to collateral attack.

In our opinion the status of such a deed as the one under consideration, as well as the manner in which it may be attacked, is clearly and lucidly laid down in the

case of *Frazier v. Jeakins, supra,* and we can do no better than quote therefrom at length:

"Was the sale void in the sense that it was subject to collateral attack? Our judgment is that it was. * * * We do not understand that courts by their use of the term 'void' always mean that utter negativeness which is the equivalent of non-existence, but they more often mean that which, relatively to persons, circumstances, conditions, or forms of action, may be treated as though it were non-existent. In this latter sense there is little distinction between it and the word 'voidable.' Really, as often used in the law, there is an interchangeability of meaning between the two words. * * * Therefore, in order to characterize the guardian's sale and deed as 'void' in the sense in which that word is most frequently used in the law, it is not necessary to regard them as inexistent. They have a form of existence and, under certain circumstances, they may be allowed or may acquire the substance of existence. The plaintiff in this case might have ratified them by express act or deed; she might have estopped herself by some course of conduct to question their validity, or she might have allowed lapse of time to bar her right to recover on the score of their invalidity; but until, by ratification, estoppel, or limitation, she has given effect to them, she is privileged to treat them as void and of no effect. As to her, they are void and of no effect because they failed to pass the title to her land. In order to characterize an act or transaction as void, it is not necessary that it should be a nullity as to everybody and for all time and under all circumstances. If the act or transaction failed to deprive interested persons of their rights or titles, failed to confer them on some one else, the act or transaction is void as to such persons. If the act or transaction requires ratification, estoppel, or limitation to transfer the right or title, it is void until the ratification has been made, the estoppel has occurred, or the time has elapsed, and even then the right or title

does not pass by virtue of the original act or transaction, but passes by virtue of the ratification, or is founded on the estoppel, or is set at rest by the lapse of time. The authorities seem to us strong and convincing that ejectment, although a collateral proceeding, will lie to recover a title claimed under a trustee's sale to himself, or in effect to himself, as in this case."

4. We are brought to consider finally whether or not, in the cancellation of a deed as in the case at bar, the party who has invested in the deed should have his money refunded as one of the conditions of the cancellation. It appears that no definite rule has been laid down, but that each individual case should be decided on its own merits. On the setting aside of a purchase by the representative at his own sale, it is the duty of the court to adjust the equities between the parties. 18 Cyc. 340. While the law permits a minor to avoid such voidable sales upon reasonable application, he is required to do equity as a condition precedent to relief. He cannot receive the benefits of a sale and also repudiate same. If he repudiates the sale, he must offer to restore whatever benefits he may have derived from said sale. *Bank of Wetumpka v. Walkley*, 169 Ala. 648, 53 South. 830.

Upon the remanding of this case, if it should develop at the trial that plaintiff, Beulah Pender, acted in good faith in making the purchase of the land in controversy, and has taken no unfair advantage therein, that the transaction was free from fraud, and that the proceeds of said sale have in fact been expended in defraying the necessary expenses of the administration, or in paying the legal and enforceable indebtedness against the estate, then she should have the same refunded, but at the same

time accounting for all property or rents coming into plaintiffs' hands by virtue of said transaction.

The case should be reversed and remanded, with instructions to the trial court to proceed in accordance with this opinion.

By the Court:  It is so ordered.