No. 31,756

THE PEOPLES BUILDING AND LOAN ASSOCIATION, *Appellee,* v. ROSA M. SEVERNS, a Widow, *Appellee,* and MARY ELEANOR SEVERNS, a Minor, *Appellant.*

(33 P. 2d 944.)

Opinion filed July 7, 1934.

*P. G. Wadham,* of Marysville, for the appellant.

*R. L. Helvering* and *Walter T. Griffin,* both of Marysville, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to foreclose a mortgage. Judgment was for plaintiff. One of the defendants appeals.

The petition pleaded the mortgage and default in payment and asked that it be foreclosed. The petition contained a further allegation that subsequent to the execution of the mortgage the defendant had conveyed to Mary Eleanor Severns, a minor, an undivided one-third of the real estate in question and that Mary Eleanor Severns claimed an interest in the real estate and that any interest she had was subsequent to the lien of plaintiff. The petition prayed for judgment, and that the mortgage be adjudged a first lien on the entire tract.

As far as we are concerned here the only question to be decided is as to the rights of Mary Eleanor Severns. Her guardian *ad litem* filed a cross petition and alleged certain facts. On the trial a stipulation was entered into as to these facts substantially as follows:

Rosa M. Severns is the mother and guardian of Mary Eleanor, who, at the time of the trial, was ten years old. On April 28, 1928, Rosa was a widow and the owner of the real estate in question. On that date she borrowed $4,300 from plaintiff and executed a note and mortgage on the real estate in question for that amount.

Rosa had the custody of $2,000 cash belonging to Mary Eleanor, her ward and daughter. She had loaned this amount to one who had signed her guardian's bond. Along in September, 1929, the person who owed this money stated that she wished to pay it and to be released from the bond. Mrs. Severns informed the probate judge that it would be necessary to find a new investment for her ward's funds. The probate court directed Mrs. Severns to invest the funds in government bonds or a good farm loan. About September 25, 1929, Mrs. Severns called on L. N. Cole, the president and managing officer of plaintiff. She informed him of the instructions of the probate court. Mr. Cole suggested that the $2,000 be invested in the real property in question by reducing the loan heretofore referred to. He gave Mrs. Severns a card showing how much the loan would be reduced and what the payments would be. This card was submitted to the probate judge. Some time later and before October 23, 1929, the probate judge orally instructed Mrs. Severns to convey to the minor an undivided one-third interest in the real estate and to thereupon pay to plaintiff the $2,000 to be applied on the mortgage. On October 24, 1929, Rosa M. Severns and one Kate Ellenbecker, who was the surety on the guardian's bond, went to plaintiff's office, and Kate Ellenbecker gave the guardian a check for $2,000, payable to the guardian, which was immediately indorsed by Rosa M. Severns and delivered to L. N. Cole personally. It was immediately indorsed by plaintiff and deposited to its account in the Exchange Bank of Marysville. The mortgage and note in question were then executed and delivered to plaintiff and the release of the $4,300 mortgage was filed October 24, 1929. The new mortgage of $1,900 was filed for record at the same time. Mrs. Severns was directed to return to Mr. Cole's office October 25, 1929, and execute a deed to the minor. She did this by executing a warranty deed to an undivided one-third interest in the real estate to Mary Eleanor Severns.

No proceedings were ever had in the probate court by the guardian for authority to mortgage the interest of Mary Eleanor Severns in the real property.

On May 16, 1932, plaintiff notified Mrs. Severns of its intention to foreclose. Her husband called on Judge Potter and was advised that the probate judge had personally consulted L. N. Cole and both had determined that the investment of the $2,000 in the purchase of an undivided one-third interest in the real property was a good investment. The foster father of Mary Eleanor about the same time called on L. N. Cole and was by him orally informed that the investment was made by the guardian upon the advice of Judge Potter and L. N. Cole.

The mortgages and deed were all acknowledged before Mr. Cole as notary public.

On October 23, 1929, an order was made by the probate court on application of the surety on the guardian's bond "that all the assets that have come to the hands of said guardian have been accounted for to the satisfaction of the court and that the surety aforesaid is under no liability by reason of said bond" and that the surety be discharged, and on November 1, 1929, a further order was made by the court finding that Rosa M. Severns "has recently invested the funds of said minor in real estate, which action in so doing was then and is now approved by the court," and "it is not necessary to continue the bond" and the sureties be discharged.

The action was tried before the court and a judgment was entered foreclosing the mortgage and ordering the entire property sold to satisfy it.

This appeal is by Mary Eleanor Severns from that part of the judgment decreeing Rosa M. Severns to be the sole owner in fee of the mortgaged premises, and that the undivided one-third interest of Mary Eleanor was subject to the lien of the mortgage.

The position taken by the trial court was that the question was one of the power of the guardian to invest the funds of her ward in encumbered real estate and that when this question was answered in the affirmative the probate court by its order of November 1, 1929, approved such investment.

It will simplify matters to state briefly just what the stipulated facts amount to. What actually happened was that a guardian paid a mortgage owed by her with funds belonging to her ward and the plaintiff association received the money to reduce the debt owed by the guardian knowing at the time that the money being paid was the money of the ward.

We will examine the case from the standpoint of whether the

probate court could have approved such a transaction in the first place, and whether, since the probate court did approve it, this court will enforce it.

The question is not simply one of the power of a guardian to invest the funds of a ward in encumbered real estate. The question goes deeper than that. Here the guardian invested her ward's funds in real estate owned by the guardian.

This court considered the question in *Frazier v. Jeakins,* 64 Kan. 615, 68 Pac. 24. In that case a guardian had sold the interest of her ward in some real estate to the husband of the guardian. She had secured an order of the probate court to make the sale and it had afterwards been confirmed. The husband had sold to a third party. The ward later brought ejectment against the third party for the land. This court held in favor of the ward. This court started out by holding that the sale and purchase were in good faith and upon full consideration. The court said, however:

"In fact, the main rule that a trustee may not profit himself out of the trust estate is no better settled than the subsidiary one that lack of fraud in the trustee's dealings will not validate the transaction." (p. 619.)

The court further said:

"The opportunities which are open to an unfaithful trustee to advantage himself out of the trust estate are so many and so tempting, and the condition of the beneficiary in the trust ordinarily so helpless and confiding, that the law gives warning in advance against all transactions out of which it is possible for the former to make gain at the expense of the latter. Hence, as was tersely and wisely said by Chief Justice Beasley, in *Staats v. Bergen,* 17 N. J. Eq. 554: 'So jealous is the law upon this point, that a trustee may not put himself in a position in which to be honest must be a strain on him.'" (p. 619.)

In this forceful language it is said by a distinguished former member of this court that a guardian cannot deal with the ward's money in any manner by which it is possible for the guardian to profit by the transaction. It will be seen that the rule springs from the knowledge possessed by the courts of the frailty of human nature. As long as courts hold steadfastly that the thing may not be done we may be sure that the money of wards will not be wasted in that particular way. Once the bars were let down there would be no one to look after the welfare of the wards and much spoliation of estates would result.

The question was again considered in *Sowers v. Pollock,* 112 Kan. 599, 212 Pac. 103. There the guardian had borrowed the money of

his wards. The probate court had made an order allowing the guardian to loan himself money. When the guardian later absconded this court allowed the wards to recover on the guardian's bond. , It was argued in that case that the probate court had decided that such a transaction was to the best interest of the estate of the minors and that since no appeal had been taken from it and it had never been set aside and as the guardian had complied with the court's order, there was no liability against the sureties on the guardian's bond. The court struck through that argument with the statement that—

"The court had no more authority to direct or approve a loan of the ward's money by the guardian to himself than he would have had to have directed a loan of the funds to the judge who made the order. His order was of no more effect than if he had authorized the guardian to use it in the purchase of lottery tickets in a bucket-shop deal or in any gambling transaction." (p. 601.)

This court in support of that statement cited *Frazier v. Jeakins,* supra; *Webb v. Branner,* 59 Kan. 190, 52 Pac. 429, and *Fidelity & Dep. Co. v. Freud,* 115 Md. 29. In the latter case a guardian borrowed a part of the fund committed to his care and this was done on the permission and authority of the orphans' court. The question there was whether, the loan being made under the sanction of an order of the court, the guardian or the sureties on his bond would be protected. The court said:

"No one having fiduciary duties to discharge should be allowed. to enter into any engagement in which he has, or can have, a personal interest conflicting, or which may possibly conflict, with the interests of those whom he is bound to protect." (p. 33.)

The plaintiff realizes the force of what has been said in the authorities cited but seeks to evade them by a claim that in this case the money of the ward was not borrowed by the guardian but was invested for the ward in the real estate in question. The argument is made in this connection that by this arrangement the guardian was not using the money of her ward for her own advantage. This argument draws much too fine a distinction in light of what actually transpired. Before the transaction with the ward's money the guardian owed a mortgage of $4,300 on her place. After the transaction she only owed about $2,300. The difference had been paid with her ward's money. What the ward received was an undivided interest in the real estate in question. It is difficult to see how the position of the ward was any better with such an interest than with

a mortgage. It is plain that the transaction was one that loaned itself readily to a scheme to profit from the ward's money. The true rule is that the court will not examine the particular transaction to learn whether it was beneficial to the ward. The idea is that it is the sort of a transaction that could so easily be the means of defrauding a ward that the courts simply will not permit it to occur.

Where does this conclusion leave the plaintiff in this action? It will be remembered that the plaintiff had full knowledge of all the circumstances. In fact, from the agreed statement of facts, there can be no doubt that the president of the plaintiff company suggested and arranged the entire transaction. The ward's money went to the bank account of plaintiff and was used to reduce the amount of loan the guardian was carrying with plaintiff. It is well known that sometimes it is as much to the advantage of a mortgagee to have a part of a loan paid that is secured by a mortgage as it is to the borrower to get it paid off. As affairs are now, it was to the advantage of the plaintiff to have the loan reduced. The real property seems to be sufficient security for a loan of $2,000, but not one of $4,300. Having thus advised and assisted in a transaction which we have seen cannot be approved by this court, can plaintiff have resort to the courts to enforce its rights growing out of such a transaction? In *Frazier v. Jeakins,* supra, the real estate had been sold to the husband of the guardian who had sold to a third party who had notice of the relationship of the parties only from recitals in the deed. This court struck down the entire transaction.

In this case the use that was made of the money of the ward constituted a conversion of it. This conversion was participated in by the plaintiff. Under such circumstances the plaintiff was liable to the ward for the money that was converted. (See *Washbon v. Bank,* 87 Kan. 698, 125 Pac. 17.) However, in this case the ward is not asking relief for conversion. As the judgment of the court now stands the plaintiff has a first and prior lien upon the entire tract of real estate. This would have the effect of foreclosing all the interest the ward has in it. The effect of what has been said here is that the plaintiff is held to have made the loan; which it seeks to foreclose with knowledge that $2,000 of the ward's money had been wrongfully used to pay off part of the former mortgage. We hold that this gives the ward a first and prior lien upon the

real estate in question in the amount of $2,000, with interest at six per cent from the date her money was invested in the real estate in question, and that this lien is superior to the lien of the plaintiff upon the entire tract.

The judgment of the trial court is reversed with directions to enter judgment in accordance with the views herein expressed.